249 F.2d 22
 FORD MOTOR COMPANY, Appellant,
v.
BISANZ BROS., Inc., a corporation, Bisanz Bros. Construction Company, a corporation, and Advance Construction Company, a corporation, on behalf of themselves and other property owners similarly situated, Appellees, and
The Chicago-Milwaukee-St. Paul and Pacific Railroad Co., a corporation, Appellee.
 No. 15814.
 United States Court of Appeals Eighth Circuit.
 November 13, 1957.
 
 M. J. Doherty, St. Paul, Minn. (R. J. Leonard and Doherty, Rumble & Butler, St. Paul, Minn., on the brief), for appellant.
 E. W. Murnane and Murnane & Murnane, St. Paul, Minn., filed brief for appellees Bisanz Bros., Inc., Bisanz Bros. Const. Co. and Advance Const. Co., on behalf of themselves and other property owners similarly situated.
 Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.
 SANBORN, Circuit Judge.
 
 
 1
 This is an appeal by the Ford Motor Company from an order of May 2, 1957, denying its application to intervene in a class action brought by Bisanz Bros., Inc., Bisanz Bros. Construction Company, and Advance Construction Company, upon their own behalf and that of other residential-property owners similarly situated, against The Chicago, Milwaukee, St. Paul and Pacific Railroad Co., to enjoin the maintenance and operation by it of certain of its railroad trackage, used for the temporary storage of freight cars, in the vicinity of the large automobile assembly plant of the Ford Motor Company in the westerly outskirts of the city of St. Paul, Minnesota. The action was brought in the State District Court of Ramsey County, Minnesota, and was removed to the United States District Court for the District of Minnesota on the ground of diversity of citizenship and amount in controversy.
 
 
 2
 It appears, without dispute, that the Railroad since 1923 has owned and operated a branch line from downtown St. Paul to the Ford assembly plant located on South Mississippi River Boulevard. In addition to the branch main track, the Railroad has owned and operated three additional tracks between West Seventh Street and Cleveland Avenue in the City, located near the property and tracks of the Ford Motor Company's assembly plant. These three tracks, together with a stub track ending at Cleveland Avenue, have been used for the storage of freight cars in connection with receiving and delivering carload shipments of freight to, and taking empty railroad cars from, the Ford plant. This trackage is known as the Davern Avenue storage and team tracks, and has been in use since 1923.
 
 
 3
 The claim of the plaintiffs is, in brief, that the ordinance of the City of St. Paul and the statutes of the State of Minnesota which authorized the Railroad to own and operate a spur track from downtown St. Paul to the Ford plant, did not authorize it to maintain a storage yard for freight cars in the vicinity of the plant; that it has been operating such a storage yard in an area zoned as Class "A" Residential Area under an ordinance passed by the City Council in August 1922; that that ordinance forbids the use of the area as a storage yard; and that the maintenance and operation of the yard by the Railroad constitutes a continuing private nuisance as to the plaintiffs and other property owners abutting upon or in the vicinity of the storage yard, which they are entitled to have enjoined.
 
 
 4
 The Railroad in its answer alleged that the storage and team tracks in suit were constructed and operated under authority of the State of Minnesota and an ordinance of the City of St. Paul enacted March 24, 1923, entitled:
 
 
 5
 "An ordinance granting to the Chicago, Milwaukee & St. Paul Railway Company, its successors and assigns, authority and permission to construct and thereafter maintain and operate for all usual railway uses and purposes a line of railway of one or more tracks, and a spur track leading therefrom, upon, over, along and across various streets, avenues, highways, boulevards and other public grounds in the City of St. Paul * * *."
 
 
 6
 The Railroad specifically denied that its maintenance or use of the storage facilities is an actionable private nuisance or is in violation of the ordinance granting it authority to maintain and operate the trackage or of the zoning ordinance referred to by the plaintiffs. The Railroad asserted that the trackage was constructed and has been operated for public purposes for the convenience and necessity of shippers, and that the Interstate Commerce Commission and the Minnesota Railroad and Warehouse Commission, "or either of them," have exclusive jurisdiction over the discontinuance and abandonment of such trackage. The Railroad asserted that if the relief demanded by plaintiffs were granted, it would cause irreparable damage to the Railroad and to shippers affected, and would constitute an unlawful and unreasonable burden on interstate commerce. The Railroad also asserted that if the operation of the trackage is an actionable nuisance the plaintiffs have an adequate remedy at law, and that laches has barred their asserted claim.
 
 
 7
 A motion of the plaintiffs for a temporary injunction was denied by the District Court. Thereafter the Ford Motor Company filed its application for leave to intervene as a defendant, together with its proposed answer (complaint in intervention) to the complaint. In its motion for leave to intervene it asserted:
 
 
 8
 "(a) That the representation of applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in this action; and
 
 
 9
 "(b) That applicant's defense and the main action have a question of law or fact in common."
 
 
 10
 In its proposed answer, the Ford Motor Company adopted the denials and allegations of the Railroad's answer. The Company alleged that since 1924 it has owned and operated the large automobile assembly plant referred to in the pleadings; that it produces more than 400 automobiles per day at the plant; that substantially all of the parts and supplies for this production are received by rail from points outside of Minnesota at the rate of about 40 carloads per day for seven days each week; that the defendant Railroad is the terminal carrier of such carloads; that the operation at the plant is such that storage tracks capable of accommodating a large number of loaded and empty cars in reasonable proximity to the plant is an imperative necessity; that increasing production has caused and will continue to cause an increase in the number of carloads, parts and supplies required at the plant, with a corresponding increase in the extent of its need for storage trackage; that ever since the plant went into operation, such need has been met by the trackage of the defendant Railroad, the use of which the plaintiffs seeks to enjoin; that the trackage now available constitutes the minimum of storage trackage essential to the present manner and level of operation of the plant; that a discontinuance or curtailment of the present storage track service will result in costly stoppages of operation, great loss to the Company, and hardship to the approximately 2,000 employees at the plant, whose wages aggregate about $13,000,000 annually, and will reduce local purchasing needs of the Company now reflected in Twin City purchases of about $2,250,000 per annum; that in the maintenance of the storage tracks in suit the Railroad is acting as a common carrier in interstate commerce, and may discontinue such storage track service only by order of the Interstate Commerce Commission, or, if not subject to the exclusive control of the Commission, then by order of the Minnesota Railroad and Warehouse Commission, made after hearing upon notice to the Ford Motor Company and other shippers affected; that plaintiffs' claim is barred by laches; and that, if such a claim exists, the plaintiffs have an adequate remedy at law.
 
 
 11
 In connection with its application, the Ford Motor Company filed affidavits in substantiation and amplification of the allegations of the proposed answer and in support of the application for leave to intervene.
 
 
 12
 Counsel for plaintiffs filed an affidavit in opposition to the application. The order of the District Court from which this appeal is taken, sufficiently discloses the grounds of the plaintiffs' opposition and the basis of the court's order denying leave to intervene.[1]
 
 
 13
 Rule 24 of the Federal Rules of Civil Procedure, 28 U.S.C.A., relating to intervention, so far as pertinent reads as follows:
 
 
 14
 "Rule 24. Intervention
 
 
 15
 "(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action * * * (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action * * *.
 
 
 16
 "(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action * * * (2) when an applicant's claim or defense and the main action have a question of law or fact, in common * * *. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."
 
 
 17
 It is apparent that the District Court concluded that there was an insufficient showing that the interests of the Ford Motor Company would be inadequately represented by the Railroad. The contention of the Company is that it was entitled to leave to intervene both under Rule 24(a) (2) and Rule 24(b) (2) — under Rule 24(a) (2) because its interest in the controversy would not be represented, or would or might be inadequately represented, by the Railroad, and that the Company would be "bound" by a judgment adverse to the Railroad within the meaning of the word "bound" as used in the Rule; and that the Company qualified for permissive intervention under Rule 24(b) (2) and that the denial of leave constituted an abuse of the court's discretion.
 
 
 18
 The plaintiffs contend that the Company did not show that it would be inadequately represented or that it would be "bound" by a judgment for the plaintiffs; and that the order denying leave to intervene was discretionary and is not an appealable order.
 
 
 19
 If the order under review was purely discretionary, under Rule 24(b) (2), the question of its appealability would be a troublesome one. Prior to the adoption of the Federal Rules of Civil Procedure it had been consistently the ruling of this Court and that of the Supreme Court that such an order was not appealable. See: Swift v. Black Panther Oil & Gas Co., 8 Cir., 244 F. 20, 30; Palmer v. Bankers' Trust Co., 8 Cir., 12 F.2d 747, 754, and cases cited; Mackey v. City of Little Rock, 8 Cir., 94 F.2d 546, 548; United States v. California Cooperative Canneries, 279 U.S. 553, 556, 49 S.Ct. 423, 73 L.Ed. 838, and cases cited. We are in accord with the statement in Missouri-Kansas Pipe Line Co. v. United States, 312 U.S. 502, 506, 61 S.Ct. 666, 668, 85 L.Ed. 975, that, with respect to a conventional form of intervention, where an appeal is made to a trial court's "good sense to allow persons having a common interest with the formal parties to enforce the common interest with their individual emphasis * * * the circumstances under which interested outsiders should be allowed to become participants in a litigation is, barring very special circumstances, a matter for the nisi prius court."
 
 
 20
 Why an assertion by an appellant that the circumstances are very special or that the trial court has abused its discretion should transmute a non-appealable discretionary order, denying leave to intervene, into an appealable order is not entirely clear. The discretion to grant or to deny a petition for leave to intervene under Rule 24(b) (2) is entrusted by law to the trial court, and there is, we think, logically no sound reason why an appellate court should, upon an appeal from such a discretionary order denying intervention, be required to review the propriety of the exercise of the trial court's discretion. And if "very special circumstances" or a clear abuse of discretion should require the intervention of an appellate court in the interest of justice, we would think that logically a discretionary order denying leave to intervene should be reviewable by mandamus, and not by an appeal from the order. Cf. Great Northern Railway Co. v. Hyde, 8 Cir., 238 F.2d 852, and 8 Cir., 245 F.2d 537; and La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290.
 
 
 21
 The author of the annotation in 15 A.L.R.2d 336, to Hartwig v. Harvey, 1947, 250 Wis. 478, 27 N.W.2d 363, 15 A.L.R.2d 333, has collected the state and federal cases upon the subject of the appealability and reviewability of orders granting or denying intervention. He says, on page 343 of 15 A.L.R.2d:
 
 
 22
 "In the Federal courts the appealability of an order denying intervention depends upon the nature of the applicant's right to intervene; if the right is absolute, the order is appealable; on the other hand, if the matter is one within the discretion of the trial court and if there is no abuse of discretion, the order is not appealable."
 
 
 23
 In support of that statement he cites Brotherhood of Railroad Trainmen v. Baltimore & Ohio Railroad Co., 331 U.S. 519, 67 S.Ct. 1387, 91 L.Ed. 1646. In that case the Supreme Court said (331 U.S. at page 524, 67 S.Ct. at page 1390):
 
 
 24
 "Ordinarily, in the absence of an abuse of discretion, no appeal lies from an order denying leave to intervene where intervention is a permissive matter within the discretion of the court. United States v. California Co-op. Canneries, 279 U.S. 553, 556, 49 S.Ct. 423, 424, 73 L.Ed. 838. The permissive nature of such intervention necessarily implies that, if intervention is denied, the applicant is not legally bound or prejudiced by any judgment that might be entered in the case. He is at liberty to assert and protect his interests in some more appropriate proceeding. Having no adverse effect upon the applicant, the order denying intervention accordingly falls below the level of appealability. But where a statute or the practical necessities grant the applicant an absolute right to intervene, the order denying intervention becomes appealable. Then it may fairly be said that the applicant is adversely affected by the denial, there being no other way in which he can better assert the particular interest which warrants intervention in this instance. And since he cannot appeal from any subsequent order or judgment in the proceeding unless he does intervene, the order denying intervention has the degree of definitiveness which supports an appeal therefrom. See Missouri-Kansas Pipe Line Co. v. United States, 312 U.S. 502, 508, 61 S.Ct. 666, 668, 85 L.Ed. 975."
 
 
 25
 That statement of the rule seems somewhat less than helpful on the question of appealability where intervention is permissive under Rule 24(b) (2) and leave to intervene is denied, since it apparently makes appealability depend upon whether an appellant who has been denied leave to intervene under Rule 24 (b) (2) is asserting (as he almost invariably will) that the denial of leave was an abuse of discretion.
 
 
 26
 In the later case of Sutphen Estates, Inc., v. United States, 1951, 342 U.S. 19, 20, 72 S.Ct. 14, 16, 96 L.Ed. 19, the Supreme Court said: "If appellant may intervene as of right, the order of the court denying intervention is appealable." In that case the Supreme Court held that the appellant had not maintained the burden of showing that it was entitled to intervene as of right. The court then went on to say (at page 23 of 342 U.S. at page 17 of 72 S.Ct.):
 
 
 27
 "Permissive intervention is governed by Rule 24(b). But we have said enough to show that the claim of injury to appellant is too speculative and too contingent on unknown factors to conclude that there was an abuse of discretion in denying leave to intervene. The court had ample reason to prevent the administration of the decree from being burdened with a collateral issue that on this record can properly be adjudicated elsewhere. * * *"
 
 
 28
 Apparently a trial court confronted by an application for leave to intervene under Rule 24(b) (2), in order to avoid the possibility of being found by an appellate court to have abused its discretion in denying leave, should resolve every reasonable doubt in favor of the applicant, since it is highly improbable that an order granting leave would be held to be an appealable order. See 15 A.L.R.2d 377 and cases cited.
 
 
 29
 We are satisfied, however, that the controlling question in this case is not whether it was an abuse of discretion to deny leave to intervene but whether the Ford Motor Company was entitled to intervene as of right under Rule 24 (a) (2).
 
 
 30
 There are three interests involved in this controversy: (1) that of the residential-property owners, claiming the right to have the Railroad enjoined from maintaining and operating the trackage in suit; (2) that of the Railroad, claiming the right of a common carrier to continue to maintain and operate the trackage; and (3) the interest of the Ford Motor Company as a shipper, claiming the right to have the Railroad furnish the freight service essential for the operation of the assembly plant and to maintain and operate the necessary trackage to furnish it. The plaintiffs represent the first of these interests; the Railroad represents the second; and the Ford Motor Company seeks intervention to represent the third.
 
 
 31
 While there is justification for a belief that the Railroad will, at a trial of this case on the merits, adequately present to the trial court all of the evidence and all of the applicable law necessary to enable the court to consider and decide the issues raised by the pleadings, including the proposed answer of the Ford Motor Company, it cannot be said with certainty that this will be so, and the Company insists that it will not be so and that it has a special interest that the Railroad does not represent.
 
 
 32
 Under Rule 24(a), if the representation of the interest of the Ford Motor Company "may be inadequate," that is enough, provided also that the Company is or may be bound by a judgment in the action. Since the Company is not an indispensable or even a necessary party to this case, and has been denied intervention, it cannot be said that, in a technical or literal sense, it would be bound by a judgment against the Railroad; but we think that in a very real sense it would be bound, since obviously such a judgment would have the practical effect of depriving the Company of its claimed right to have the Railroad furnish the service which is essential to the operation of the Company's plant and to retain the means for furnishing the service. The Company is confronted with the possibility of being deprived in this litigation of essential railroad service, to which it claims to be entitled through the Railroad's being permanently deprived of the means of furnishing the service and thus being relieved of the obligation of having to furnish it.
 
 
 33
 This, we think, is a situation where "the practical necessities grant the applicant an absolute right to intervene." Brotherhood of Railroad Trainmen v. Baltimore & Ohio Railroad Co., supra, at page 524 of 331 U.S., at page 1390 of 67 S.Ct. See and compare, Clark v. Sandusky, 7 Cir., 205 F.2d 915, 919.
 
 
 34
 Our conclusion is that the Ford Motor Company sufficiently established its right to intervene under Rule 24(a) (2). The order appealed from is vacated, and the District Court is directed to grant the Company leave to intervene.
 
 
 
 Notes:
 
 
 [1]
 The order reads as follows:
 "This matter is before the court upon the motion of Ford Motor Company for leave to intervene as a defendant pursuant to Rule 24 of the Federal Rules of Civil Procedure.
 "The motion is opposed by plaintiffs who by affidavit of their counsel contend as follows:
 * * * * *
 "`The scope of this litigation is limited by the pleadings to an action to abate and enjoin a nuisance consisting of a storage yard operated and maintained by the defendant in a Class A residential district of the city of St. Paul, in violation of existing zoning laws of that city.
 "`Applicant does not claim to be engaged in railroad activities; does not own any of the tank cars or box cars or other railroad equipment affected by or to be affected by this litigation; does not own or control the land used by the defendant in its operation of the storage yard; does not claim to be participating in any of the objectionable activities and does not show itself to be anything other than a shipper, dependent upon the defendant for an expeditious handling of freight consigned to the defendant as a common carrier.
 * * * * *
 "`If a permissive intervention is granted, it will merely result in reassertion by the applicant of the same defenses already made by the defendant and would add nothing warranting the granting of intervention, as is demonstrated by the proposed answer attached to the moving papers.
 "`There is no showing by affidavit or otherwise, except for the motion itself, that whatever interests applicant may have as shipper are not being adequately protected by the defendant. To the contrary, the files and records of this case presently show that applicant, through its local and Detroit agents and employees, has submitted and filed affidavits which were used by defendant in its opposition to plaintiffs' motion for temporary injunction, setting forth in detail the facts and circumstances now set forth in applicant's proposed answer.'
 "The proposed complaint in intervention (not verified) outlines an investment of millions of dollars in plant and payroll of personnel presently served by defendant common carrier and states that curtailment of service by defendant would necessarily follow discontinuance or curtailment of the storage track service involved in the instant case.
 "Intervention of right under Rule 24(a) requires inadequacy of representation. This is shown if there is proof of collusion between the representative and an opposing party, if the representative has or represents some interest adverse to that of the petitioner, or fails because of non-feasance in his duty of representation. 4 Moore's Federal Practice, page 38. Obviously there is no inadequacy of representation in the instant case as presently aligned. Hence, there is no basis for intervention of right under Rule 24(a).
 "The only remaining feature of the pending motion is movant's claim to intervene under Rule 24(b) on the theory that permissive intervention is justified. The requirement for permissive intervention is that the applicant's claim or defense and the main action have a question of law or fact in common. The matter is one which comes within the court's discretion, and the question presented is whether exercise of the court's discretion in favor of intervention would unduly delay or prejudice the adjudication of the rights of the original parties. Denial of intervention is approved where the intervener raises no new issues and where the granting of the motion would merely delay adjudication of the case. 4 Moore, supra, page 64.
 "Applicant emphasizes the importance of the issues already raised by the original parties. Under these circumstances applicant can most expeditiously serve its purposes by filing a brief amicus curiae. Such a brief may be filed.
 "Said motion may be and the same is hereby denied. * * *"