922 F.2d 704
 18 Fed.R.Serv.3d 1448, 21 Envtl. L. Rep. 20,774
 UNITED STATES of America, Plaintiff-Appellee,
Florida Keys Citizen Coalition, Florida Wildlife Federation,
Environmental Defense Fund, Sierra Club, National Wildlife
Federation, Wilderness Society, National Parks &
Conservation Association and Defenders of Wildlife,
Plaintiffs-Intervenors-Appellees,
Florida Audubon Society, et al., Plaintiffs-Intervenors,
v.
SOUTH FLORIDA WATER MANAGEMENT DISTRICT, John R. Woodraska
and Florida Department of Environmental
Regulation, Defendants-Appellees,
Dale Twachtman, Defendants,
City of Belle Glade, Defendant-Intervenor,
Western Palm Beach County Farm Bureau, Inc., Florida Fruit
and Vegetable Association, Florida Sugar Cane
League, Inc., Roth Farms, Inc., K.W.B.
Farms and Beardsley Farms,
Inc., Movants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
SOUTH FLORIDA WATER MANAGEMENT DISTRICT, et al., Defendants,
Western Palm Beach County Farm Bureau, Inc., et al., Appellants.
 Nos. 89-6029, 89-6269.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 28, 1991.
 
 William L. Earl, Peeples, Earl & Blank, P.A., Timothy H. Crutchfield, Peeples, Earl & Blank, P.A., Miami, Fla., for movants-appellants.
 David J. White, Nat. Wildlife Federation, Atlanta, Ga., for Nat. Wildlife Federation.
 Jerry Jackson, Skadden, Arps, Slate, Meagher & Flom, James A. Rogers, James R. Wrathall, Washington, D.C., for South Florida Water Management.
 Robert G. Gough, State of Fla, Dept. of Environmental Regulation, Tallahassee, Fla., for State of Fla.
 David J. White, Proenza, White, Huck & Roberts, Miami, Fla., David A. Crowley, State of Fla., Dept. of Environmental Regulation, Tallahassee, Fla., for Environmental Defense Fund, et al.
 Dexter W. Lehtinen, Susan Hill Ponzoli, Asst. U.S. Atty., Miami, Fla., Ellen J. Durkee, Appellate Section, Dept. of Justice, David C. Shilton, Washington, D.C., for plaintiff-appellee.
 Thomas W. Reese, St. Petersburg, Fla., for plaintiffs-intervenors.
 Stanley James Brainerd, Florida Chamber of Commerce, Tallahassee, Fla., for amicus curiae, Florida Chamber of Commerce.
 Robert B. Baker, Jr., Southeastern Legal Foundation, Inc., Atlanta, Ga., for amicus curiae, Southeastern Legal Foundation, Inc.
 James T.B. Tripp, Environmental Defense Fund, New York City, for Environmental Defense Fund.
 David Crowley, Robert G. Gough, Tallahassee, Fla., for Florida Dept. of Environmental Regulation.
 Appeals from the United States District Court for the Southern District of Florida.
 Before HATCHETT and ANDERSON, Circuit Judges, and ESCHBACH*, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge:
 
 
 1
 This is an appeal by three farm corporations and three agricultural organizations (together, the "Farm Interests") of the District Court's order denying them intervention under Fed.R.Civ.P. 24(a) and (b). The Farm Interests, or their members, rely on the defendant South Florida Water Management District (the "Water District") to provide irrigation and flood control services for their crops. The Farm Interests claim to be proper parties to this suit because the plaintiff United States seeks to restrict the Water District's operations. The United States claims that the Water District releases water polluted with farm runoff and that this pollution is strangling the mosaic of plants and animals that comprise the Loxahatchee National Wildlife Refuge and Everglades National Park. We hold that the Farm Interests have the right to intervene in this case. This right results solely by reason of the issues raised in Count I of the United States' Amended Complaint,[1] which asks the District Court to translate the state's narrative water quality standards into numeric criteria. The Farm Interests derive no right to intervene, however, by reason of the issues raised in Counts II, III, and IV, which assert that the Water District is violating state permitting requirements and has breached two contracts with the United States. On remand, the District Court may, if it finds appropriate, restrict the Farm Interests' participation in this case to the issues relating to Count I, or may bifurcate the proceedings between Count I and the other counts to promote judicial efficiency.
 
 Jurisdiction
 
 2
 This Court has provisional jurisdiction under the "anomalous rule [that] has evolved in the federal appellate courts concerning the appealability ... of an order denying intervention." Weiser v. White, 505 F.2d 912, 916 (5th Cir.1975).[2] Under this rule, "[i]f the district court was correct in denying the motion to intervene, this court's jurisdiction evaporates and we must dismiss the appeal for want of jurisdiction. If the district court erred, we retain jurisdiction and must reverse." Federal Trade Comm'n v. American Legal Distributors, 890 F.2d 363, 364 (11th Cir.1989). The rule is "anomalous" because of the "seemingly inconsistent approach of reaching the merits to determine jurisdiction." Weiser, 505 F.2d at 917. Not surprisingly, this Court has noted "criticism of this rule, advocating a simple review of the denial of intervention as a final order." United States v. Jefferson County, 720 F.2d 1511, 1515 n. 12 (11th Cir.1983). Under either approach, we proceed to the merits.
 
 Intervention by Right
 
 3
 Under Fed.R.Civ.P. 24(a), a nonparty may intervene by right if:the applicant claims an interest in the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 4
 To support intervention, a nonparty's interest must be "direct, substantial, [and] legally protectable." Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir.1989), quoting Athens Lumber Co. v. Federal Election Comm'n, 690 F.2d 1364, 1366 (11th Cir.1982), quoting Howse v. S/V "Canada Goose 1", 641 F.2d 317, 320-21 (5th Cir.1981).[3] A nonparty may have a sufficient interest for some issues in a case but not others, and the court may limit intervention accordingly. See Howard v. McLucas, 782 F.2d 956, 960-61 (11th Cir.1986) (restricting intervenors to participation in the single, remedial issue for which they had "standing").[4] Also, the court may order a separate trial of claims or issues subject to intervention when "conducive to expedition and economy." See Fed.R.Civ.P. 42(b). In the present case, the main issue is whether and to what extent the Farm Interests have a legally protectable interest at stake. This, in turn, depends on the specific claims that the United States makes in its Amended Complaint.
 
 
 5
 Count I: Violation of Narrative State Law Standards
 
 
 6
 In Count I of its Amended Complaint, the United States asks the District Court to translate narrative state water quality standards into numeric limits. Specifically, the United States alleges that the Water District is violating the Florida Surface Water Improvement and Management Act of 1987 (the "SWIM Act"), which provides that the Water District's operations must not "adversely affect indigenous vegetation communities or wildlife." Fla.Stat. Sec. 373.4595(2)(a)(1); see also Fla.Admin.Code Sec. 17-302.560(19) (barring acts that create "an imbalance in natural populations of aquatic flora or fauna").[5] This narrative standard is unspecific about exactly what concentrations of nitrogen and phosphorous--the particular nutrients at issue in this case--are permissible. But as counsel for the United States stated in oral argument, an order setting maximum concentrations of nutrients is the remedy that the United States seeks.[6] If it finds for the United States on Count I and grants the relief requested, the District Court will in effect translate the narrative water quality standards in the SWIM Act into numeric limits.
 
 
 7
 The problem is that the SWIM Act directs the Water District to conduct administrative proceedings towards this same end--translating the Act's narrative standards into specific numeric limits. The Water District has issued a draft "Surface Water Improvement and Management Plan for the Everglades," v. 1 and 2 (August 9, 1989) (the "draft SWIM Plan") which proposes numeric standards for implementing the SWIM Act's requirements, and the Water District is currently working on a final version. The Act delegates specific authority to the Water District to develop the SWIM Plan. See Fla.Stat. Sec. 373.451(5) (stating, "The Legislature finds that surface water problems can be corrected ... through plans and programs ... that are planned, designed, and implemented by the water management districts"). The broad narrative language of the SWIM Act confirms the grant of administrative discretion to define what the Act's standards mean. Cf. Chevron v. Natural Resources Defense Council, 467 U.S. 837, 843-44, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694 (1984) (discussing the implicit grant of administrative discretion in legislative use of broad statutory language). In short, the United States in Count I asks the District Court to partially pre-empt the administrative development of the SWIM Plan by specifying the numeric standards that apply under the SWIM Act.
 
 
 8
 The Farm Interests have a legally protectable right under the SWIM Act to participate and comment in the administrative development of the final SWIM Plan, and to pursue an administrative appeal. See Fla.Admin.Code Sec. 17-43.035(2) (requiring public hearing in the preparation of the SWIM Act); Fla.Stat. Sec. 373.114 (providing a right to administrative appeal which applies to the final SWIM Plan). Besides being legally protectable, the Farm Interests' right is directly and substantially related to Count I. The right is direct because it is a right to participate in the very matter being decided--what numeric standards should apply under the SWIM Act to the water that the Water District releases. And the right is substantial because it is the Farm Interests' only means of defending their interest in the Water District's services.
 
 
 9
 The District Court's decision in this case may impair the Farm Interests' ability to protect their right to participate in the administrative proceedings. If the District Court issues an injunction setting numeric water quality limits, that injunction will of course bind the Water District. The Water District could not deviate from the terms of the District Court's order by its own initiative. The District Court's decision could thus erase the Farm Interests' legally protectable right to participate in the administrative development of the numeric standards that apply under state law.[7]
 
 
 10
 Absent intervention in this case, some avenues of relief would remain open to the Farm Interests through subsequent litigation, because they cannot be bound to a decision to which they are neither party nor privy. See In re Birmingham Reverse Discrimination Employment Litigation, 833 F.2d 1492, 1498 (11th Cir.1987) (holding that one who is not a privy or party to litigation may not, as a matter of due process, be bound by the decision), affirmed sub nom Martin v. Wilks, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989).[8] In this regard, the Farm Interests would remain free to challenge the final SWIM Plan in state court. See Fla.Stat. Sec. 120.68 (providing for judicial review of final administrative action in state courts). Even so, a subsequent court would likely be reluctant, as a practical matter, to issue a decision that conflicts with the District Court's order in the present case. This reluctance may entail something more than the usual respect for prior decisions under the doctrine of stare decisis. The effect of the District Court's decision on subsequent courts thus provides a further basis for concluding that the Farm Interests' have shown a potential impairment of their rights sufficient to establish intervention. See Chiles v. Thornburgh, 865 F.2d 1197, 1214 (11th Cir.1989) (stating that the potential stare decisis effect of a judgment may, by itself, support intervention). In short, the Farm Interests have a direct, substantial, legally protectable interest in Count I, and this case may impair their ability to defend that interest.
 
 
 11
 The final question is whether the Farm Interests' are adequately represented by the Water District. The Farm Interests' position is at odds with that of the Water District in key respects. For example, the draft SWIM Plan that the Water District has issued specifies a phosphorous concentration of 0.03 ppm for water released to the Everglades system. See Draft Swim Plan, v. II, p. 117. The Farm Interests do not accept this figure, and point to the statement by the Water District before the District Court that even a less restrictive standard of 0.05 ppm of phosphorous would entail "draconian consequences" for the farms using the water. Transcript of Hearing held on March 7, 1989, p. 11. In these circumstances, the Farm Interests should not be required to rely on the Water District to represent them. See Chiles v. Thornburgh, 865 F.2d 1197, 1214 (11th Cir.1989) (holding that the "possibility" that a party would not sufficiently "emphasize" the position of intervenors meant that adequate representation was not present).
 
 
 12
 In sum, the Farm Interests have a direct, substantial, legally protectable interest in participating in the development of numeric water quality standards under state law. Their ability to protect this interest will be impaired if the District Court issues an injunction specifying numeric standards for the Water District because that injunction will bind the Water District in its administrative proceedings, and will have at least a stare decisis effect in subsequent litigation. Finally, the Water District may not adequately represent the Farm Interests because the two differ on the numeric standard that applies. The Farm Interests thus meet the criteria for intervention by right by reason of the issues raised in Count I. On remand, the District Court may choose to condition their intervention in this case on such terms as will be consistent with the fair, prompt conduct of this litigation.[9]
 
 Counts II, III, and IV:
 
 13
 Failure to Obtain State Permits and Breach of Contract
 
 
 14
 In Count II of its Amended Complaint, the United States contends that the Water District has violated Florida law by operating pumps, water control structures, and canals without required permits. In Counts III and IV, the United States contends that the Water District has breached a February 10, 1984 contract between it and the Army Corps of Engineers, and a June 8, 1951 contract between it and the United States. Again, the initial question is whether the Farm Interests have a legally protectable interest in the United States' contentions. Because their interests are not legally protectable, the Farm Interests derive no right to intervene by reason of the issues raised in these counts.
 
 
 15
 The Farm Interests have asserted no property or other legal right in the Water District's services directly. Instead the Farm Interests say that their economic interests depend on those services. This is not enough.
 
 
 16
 "By requiring that the applicant's interest be ... 'legally protectable,' it is plain that something more than an economic interest is necessary. What is required is that the interest be one which the substantive law recognizes as belonging to or being owned by the applicant."
 
 
 17
 New Orleans Public Service, Inc., v. United Gas Pipe Line Co., 732 F.2d 452, 464 (5th Cir.) (en banc) (emphasis original), cert. denied, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984); see Getty Oil Co. v. Department of Energy, 865 F.2d 270, 276 (Temp.Em.Ct.App.1988) (stating, "An economic interest ... alone is insufficient to warrant intervention") (citation omitted). This does not mean that the Farm Interests' economic livelihood is unimportant. It only means that the Farm Interests must show that the present proceedings threaten some substantive legal protection for their livelihood to support intervention by right.
 
 
 18
 A comparison may help make this point clear. The Farm Interests have referred the Court to the Eighth Circuit's decision in Ford Motor Co. v. Bisanz Bros., Inc., 249 F.2d 22 (8th Cir.1957). In Ford, the court of appeals held that Ford Motor Company could intervene by right in a nuisance action by a neighboring landowner against the railroad that served the Ford factory. We believe that Ford was rightly decided because, although Ford did not own the railroad, the railroad apparently could not have suspended service to Ford without an order from the Interstate Commerce Commission, after notice to Ford and a hearing in which Ford would have had the right to participate. Id., at 23, 24. Thus, Ford claimed a "right to have the railroad furnish service" and the railroad had "the obligation " to provide those services. Id., at 28 (emphasis added). If, on the other hand, the railroad had been free to suspend its service, Ford would have had no legally protectable interest at stake, no matter how much Ford's economic interests may have depended on that service. The holding in Ford thus supports the rule that a legal interest in the proceedings is necessary to support intervention.
 
 
 19
 Again, the Farm Interests have not asserted any legal right in the Water District's services--however much their economic interests may depend on those services. Nor have the Farm interests claimed any right to participate in the state's decision on the permit requirements that apply to the Water District, which is the subject of Count II, or any right as a third-party beneficiary under the 1984 contract, which is the subject of Count III. The Farm Interests do make a passing claim to being third-party beneficiaries under the 1951 contract in Count IV, but this is baseless. The 1951 contract is governed by federal law, which allows identifiable third parties to assert direct obligations to them under a contract. See, e.g., Berberich v. United States, 5 Cl.Ct. 652, 655-56 (1984), aff'd without opinion, 770 F.2d 179 (Fed.Cir.1985). The Farm Interests fail to point to any specific language in the 1951 contract that confers rights on them. Instead they simply rely on the contract's broad purposes of flood control and environmental protection to support their claim. These purposes extend to the Farm Interests, but they also extend to nearly everyone else in central and southern Florida. The Farm Interests are not third-party beneficiaries of the 1951 contract.
 
 
 20
 In short, the Farm Interests have no legally protectable interest at stake in the issues raised in Counts II, III, or IV of the Amended Complaint. With no legally protectable interest, the Farm Interests derive no right to intervene from the issues raised in these counts.[10] As discussed above, the District Court may prevent delay in the resolution of these counts by placing appropriate conditions on the Farm Interests' intervention in this case, or by ordering separate trial and discovery of one or more of these counts.[11]
 
 Permissive Intervention
 
 21
 The Farm Interests also ask this Court to review the District Court's denial of permissive intervention under Fed.R.Civ.P. 24(b). We review for abuse of discretion. See Chiles v. Thornburgh, 865 F.2d 1197, 1215 (11th Cir.1989). The District Court concluded that permissive intervention would "delay and prejudice the rights of the original parties" and "make this case even more unmanageable than it already appears to be" by adding witnesses and collateral issues. District Court's Order on Motions to Intervene and Rule 19 Joinder, p. 9. We find no abuse of discretion in this decision. In a similar context, Judge Tuttle recently wrote for this Court:
 
 
 22
 intervention [in this case] ... would severely protract the litigation. Although we express no opinion as to the merits of plaintiff's claims, an action which seeks to preserve the environment from further deterioration deserves refuge from ... undue delay.
 
 
 23
 Manasota-88, Inc. v. Tidwell, 896 F.2d 1318, 1323 (11th Cir.1990) (emphasis added). In the present case, the District Court is correct to use its full discretionary powers--including its discretion to deny permissive intervention--to prevent delay that may lead to further deterioration of the Everglades.
 
 Conclusion
 
 24
 The Farm Interests meet the criteria for intervention by right by reason of the issues raised in Count I of the Amended Complaint. The order denying intervention is reversed and the case is remanded to the District Court to allow intervention subject to such conditions as the District Court finds appropriate consistent with this opinion.
 
 
 25
 Reversed and Remanded.
 
 HATCHETT, Circuit Judge, dissenting in part:
 
 26
 I dissent from that portion of the majority opinion which allows the Farm Interests to intervene as a matter of right. The majority's reversal of the district court on Count I is for two reasons: (1) "the district court's decision in this case may impair the Farm Interest ability to protect their right to participate in the administrative proceedings. If the district court issues an injunction setting numeric water quality limits, that injunction will of course bind the water district"; and (2) "viewed from a different angle, Count I of the complaint seeks to move a state administrative task--development of standards for implementing broad commands of the SWIM Act--to federal court."
 
 
 27
 The majority's reliance on these two reasons indicates that intervention of right is being provided to the Farm Interest because the majority has imagined "horribles." The majority recognizes that Count I of the complaint seeks to move a state administrative task to federal court, but concludes that an experienced district court judge does not or will not recognize the shift from Florida administrative proceedings to federal court litigation. At this early stage of the proceedings, I would affirm the district court and allow it to continue sharpening the issues mindful of the affect a numeric level determination would have on the Farm Interests' administrative remedies. Surely, if the time arises where the Farm Interests' remedies will be affected, the district court will take steps to protect those interests.
 
 
 28
 Of course, we must not forget that the courts of Florida, the courts of the United States, and Florida's administrative agencies, are open and capable of addressing issues framed by the Farm Interests.
 
 
 
 *
 Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 The docket sheet for this case indicates that the United States filed a Second Amended Complaint on February 8, 1990, which apparently differs from the Amended Complaint only in stating that the United States has complied with certain notice requirements that apply to Counts I and II. Because the Second Amended Complaint was not included in the record on appeal, we address the Amended Complaint, as the parties did in their briefs
 
 
 [2]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [3]
 The requirement of a direct, substantial, legally protectable interest makes practical sense and reinforces the other criteria under Rule 24(a). A nonparty with an indirect or insubstantial interest by definition has little at stake in the proceedings and so cannot suffer significant harm from the outcome. Further, a nonparty with a tenuous interest in the proceedings will have little incentive to litigate fully, a point that reinforces the Rule's criterion of adequate representation. Similarly, the requirement that the nonparty assert an interest that is legally protectable reinforces the Rule's criterion of impairment of interest. Denial of intervention cannot impair a nonparty's ability to protect its interests if that nonparty would have no legal protection for those interests in any event
 
 
 [4]
 See also Harris v. Pernsley, 820 F.2d 592, 599 (3rd Cir.) (stating that an applicant for intervention "may have a sufficient interest to intervene as to certain issues in an action without having an interest in the litigation as a whole"), cert. den. 484 U.S. 947, 108 S.Ct. 336, 98 L.Ed.2d 363 (1987); United States v. American Telephone & Telegraph Co., 642 F.2d 1285, 1291 (D.C.Cir.1980) (discussing with approval the rule that "intervention for individual issues ... [may be] appropriate to protect particular interests, with the limited nature of the intervenor's interest determining the scope of the intervention that should be allowed"); Bradley v. Milliken, 620 F.2d 1141, 1142-3 (6th Cir.1980) (ordering intervention "for the limited purpose of presenting evidence" on a single issue, but restricting participation on other issues to the extent that the district court would choose to allow the applicants to serve as amici ); cf. Southern v. Plumb Tools, 696 F.2d 1321, 1321-1323 (11th Cir.1983) (per curiam) (holding that a district court's failure to restrict the participation of an intervenor in certain issues at trial was reversible error due to the state evidentiary rules that applied). Restricting intervention to the particular issues for which the proposed intervenor has a sufficient interest accords with standard party practice. Defendants, after all, are often named only for particular counts in multi-party litigation, and their right to participate in the case extends only to issues relating to the counts for which they are named parties. Defendant-intervenors like the Farm Interests may similarly have an interest only in particular counts, and the scope of their participation in the case should correspond with the scope of that interest
 
 
 [5]
 In a footnote to its brief, the United States also alleges a violation of the state's antidegradation rule, which prohibits reduction in the water quality of any "Outstanding Florida Waters" below the quality that existed in 1979. See Fla.Admin.Code Sec. 17-3.041(1), (8). This antidegradation rule provides, however, that it "shall be implemented through the [state's] permitting process." Fla.Admin.Code Sec. 17.3041(7). The state's alleged failure to enforce its permitting requirements is the subject of Count II of the Amended Complaint, and the antidegradation rule is better seen as an issue relating to that count than to Count I
 
 
 [6]
 In oral argument, the United States stated:
 The reason that ... [the SWIM Act states] a narrative standard rather than a numerical standard, is because the impact of nutrients is dependant on the ecosystem. We are not seeking in this lawsuit one numerical standard for the State of Florida. The only thing that we are concerned with in this lawsuit is a numerical standard for the vegetation in the Park and the Refuge, and I don't believe from the evidence we have right now that we will be seeking the same numerical standard for the Park and the Refuge.
 (emphasis added). In fairness to the District Court, we note that the United States claimed in that forum that it was not seeking a numeric standard:
 In regard to the draft SWIM Plan, I believe that this is something in a separate proceeding.... The business of putting a numerical limit on total phosphorous, that is within that separate process, putting a practical standard ... on a narrative written standard. That is simply a practical limit. But that is not presently in this litigation. We are not asking for a number.
 Transcript of Hearing held on November 1, 1989, pp. 30-31 (emphasis added).
 
 
 [7]
 Viewed from a different angle, Count I of the Complaint seeks to move a state administrative task--development of standards for implementing the broad commands of the SWIM Act--to federal court. If the state is not doing its job and statutory authority supports federal proceedings, this move is legally proper. The problem is that various groups have the right to participate in the decision in the administrative forum. If their rights of participation are not to be lost, the administrative participants must receive a corresponding right to participate in the judicial proceedings. So too, the federal court needs to hear what these administrative participants have to say so that it can make an informed decision
 
 
 [8]
 In his dissent to the Eleventh Circuit's opinion, Judge Anderson "agree[d] with the ... court that the[ ] plaintiffs were not parties to the prior litigation which resulted in the consent decree [at issue], and ... [were] not bound by the consent decree and should be free on remand to ... test its validity." 833 F.2d at 1503. He concluded, however, that certain practical consequences could still follow from the consent decree--specifically, that a party to the decree could rely on it and use compliance with its terms as evidence of nondiscriminatory intent in the subsequent suit by the nonparties. Id., at 1502. The Supreme Court's affirmance did not take any position on this issue. See 490 U.S. 761, 109 S.Ct. at 2184 n. 1
 As Judge Anderson suggested in oral argument in the present case, the Water District can protect itself against the risk of multiple lawsuits by using Fed.R.Civ.P. 19 and 23 to join necessary parties or to certify a defendant class for any issues (in particular, those raised in Count I) where this risk is present. "The parties to a lawsuit presumably know better than anyone else the nature and the scope of the relief sought in the action.... It makes sense therefore to place on them a burden of bringing in additional parties where such a step is indicated." Id., 490 U.S. at 765, 109 S.Ct. at 2186.
 
 
 [9]
 "An intervention of right ... may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of proceedings." Fed.R.Civ.P. 24(a) advisory committee's notes to 1966 amendments. To mention a few options, the District Court may find it appropriate to (1) allow the other parties to produce documents in a single set for the Farm Interests to share and copy among themselves, (2) require the organizational Farm Interests to respond to interrogatories regarding each of their members who claims an interest in the proceedings, and/or (3) limit the Farm Interests to a few or a single counsel. On this last option, see, for example, Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 526 and n. 2 (9th Cir.1983) (stating, "Throughout these proceedings intervenors have ... spoken with one voice. Nothing in this opinion should be interpreted as approving participation by the intervenors on any other basis")
 
 
 [10]
 There is some dispute as to whether the United States has a fifth count for common law nuisance lurking in its Amended Complaint. The United States contends that the "delivery of nutrient-loaded waters [by the Water District] constitutes a nuisance under Florida law" and asks for an injunction to "abate the nuisance." Amended Complaint, pp 48, 68. The United States clarified in oral argument, however, that it is referring to Fla.Stat. Sec. 373.433, which declares acts in violation of the state's permit and water quality requirements to be a statutory nuisance. The nuisance claim, then, does not add a substantive count to the United States' other claims arising under state law
 
 
 [11]
 We note that the 1984 contract that is the subject of Count III may be particularly appropriate for separate trial and discovery because it already lists numeric water quality standards for phosphorous, nitrogen, and other constituents. For this reason, the determination of whether the Water District has breached this contract may be straightforward. A separate trial and discovery on this count may thus allow the District Court to provide prompt, initial relief, if it turns out that the United States can prove its allegations