On Application for Rehearing
The opinion of November 6, 1998, is withdrawn and the following is substituted therefor.
This appeal presents a dispute among three sisters over the apportionment of the proceeds of a settlement that was reached in a case in which one of the sisters, as executrix of the estate of their mother, filed a wrongful-death claim against Southeastern Property Management, Inc., and Highland Manor, Ltd., operators of an apartment complex, and also joined in the same action her own individual claim against these defendants alleging fraud. The other two sisters, who were entitled to share in any proceeds of the wrongful-death claim, were permitted to intervene in the case for a limited purpose. They appeal from a judgment applying $100,000 of the $150,000 settlement proceeds to the individual fraud claim and $50,000 to the estate for distribution under the laws of intestacy. They argue that Karla's individual fraud claim for damages incurred by reason of Murial's death is not cognizable at law.
The legal question presented is whether the settlement proceeds of $150,000 should have been distributed entirely under the provisions of Alabama's Wrongful Death Statute, § 6-5-410, Ala. Code 1975, or whether the settlement proceeds could be apportioned in discharge of both claims, as determined by the trial court. The trial court made its apportionment after holding a hearing at which counsel representing the defendants stated that the personal representative's individual fraud claim was the primary reason for the settlement.
Applying traditional principles of appellate review, we affirm.
 Facts
Murial Ausley was murdered on January 3, 1996, in her residence at Highland Manor, an apartment complex, in Birmingham. Karla Rene Ausley, Murial's daughter, was appointed executrix of Murial's estate on March 7, 1996. She later sued the operators of Highland Manor, along with other defendants, alleging several causes of action. Specifically, as executrix Karla alleged the wrongful death of her mother, a claim based on § 6-5-410, Ala. Code 1975. In her individual capacity, she alleged breach of contract, willful and wanton conduct, the tort of outrage, and fraud. Karla predicated her individual fraud claim upon the fact that she had assisted her mother in securing an apartment at Highland Manor. Specifically, Karla alleged in her complaint that the defendants had "fraudulently and/or negligently misrepresented the level of security ... to induce her to enter into an agreement to place her mother into the premises known as Highland Manor." Karla alleged that the murder of her mother occurred as a result of a lack of adequate security.
On November 13, 1997, Shelia Marcum and Marilyn Caraway, also daughters of Murial and sisters of Karla, petitioned the circuit court to join them in Karla's action, pursuant to Rule 19(a)(2), Ala. R. Civ. P. In their petition, they alleged that Karla's pursuing her individual claims along with the wrongful-death claim, which she had filed in her representative capacity, constituted a "conflict of interest." Shelia and Marilyn sought to protect their interests in any proceeds *Page 847 
based on the wrongful-death claim; the circuit court granted "limited intervention" for this purpose. Both Shelia and Marilyn were represented by counsel, but they were not otherwise involved in the proceedings.
On November 18, 1997, the circuit court granted the defendants' summary judgment motion as to Karla's individual claims alleging breach of contract, willfulness and wantonness, and the tort of outrage. However, it allowed Karla to proceed, individually, with her fraud claim and, in her capacity as executrix, with her wrongful-death claim.
On November 19, 1997, the trial began. Shelia and Marilyn were not involved in any manner in the trial. On the same day the trial began, Karla and the defendants agreed to settle for $150,000. The circuit court then entered a judgment dismissing the fraud and wrongful-death claims.
On December 2, 1997, Shelia and Marilyn moved the circuit court to amend the judgment to include instructions for disbursing the settlement proceeds, and on December 4, 1997, the circuit court ordered the defendants to pay the settlement amount to Karla's attorney for deposit into a trust account, pending a determination of the appropriate disbursement of the proceeds. On December 15, 1997, the circuit court, on motion, consolidated Karla's action with the administration of the estate, so as to resolve all matters relating to the settlement proceeds, and it subsequently conducted a hearing to determine the proper apportionment of the settlement proceeds. The court heard testimony from Karla, as well as from the lead defense lawyer responsible for the trial preparation andl for the settlement of the wrongful-death and fraud claims. That lawyer testified that the value of the fraud claim provided the main basis for the settlement of the case. Specifically, he pointed to the "danger" of the fraud claim's "jury appeal" as a reason for settling the entire case.
Shelia and Marilyn argued at the hearing, as they do here, that Alabama law did not allow Karla to seek damages based upon Murial's death through individual claims, such as the fraud claim Karla made in this case. Therefore, they argued, the settlement proceeds were acquired as a result of the wrongful-death claim and the entire amount was subject to distribution in accordance with § 6-5-410, Ala. Code 1975. The circuit court rejected their arguments and, based upon the testimony presented at the hearing, found that the value of the fraud claim constituted two-thirds of the $150,000 settlement. This finding left $50,000 to be distributed among Karla and her sisters for the wrongful-death claim.
Shelia and Marilyn ask this Court to address the issues whether Karla's fraud claim for damages based on harm or loss incurred by reason of Murial's death is even cognizable at law and, if it is not, whether the circuit court's apportionment order was erroneous. Karla points out that the trial court had permitted her sisters to intervene for a limited purpose only and, therefore, she argues, they should not be allowed to raise issues not directly associated with the proper apportionment of the settlement proceeds. The record supports Karla's argument. Therefore, we conclude that Shelia and Marilyn, not having sought to intervene to raise the issue whether an individual fraud claim is cognizable under Alabama law in a wrongful-death context, and having acquiesced in the circuit court's limited intervention order, cannot now raise that substantive issue.
 Intervention
The maintenance of an action, including, specifically, the joinder and intervention of parties, is governed by the Alabama Rules of Civil Procedure. Joinder of parties is governed by Rules 19 and 20; intervention is governed by Rule 24.
In our statement of the facts above, we noted that Shelia and Marilyn moved the circuit court to be joined pursuant to Rule 19(a)(2). However, the circuit court granted them, to use its words, a "limited intervention." That intervention was described in the record as being "for the limited purpose of protecting [Shelia and Marilyn's] interests as heirs at law to the Estate of Murial Ausley."
The circuit court's use of the "limited intervention" language is significant. While the wording of Rule 19 and the wording of Rule 24 would seem to cover the same areas, *Page 848 
the two rules are somewhat different. This Court has written:
 "While the rules governing intervention and joinder are similar, they are distinguishable. Joinder, under Rule 19, ... is a method by which one may be compelled to become a party. Intervention, under Rule 24, ... is a method by which an outsider with an interest in a lawsuit may come in as a party on his own application." l
Duncan v. First Nat'l Bank of Jasper, 573 So.2d 270, 274 (Ala. 1990). Clearly, Rule 24 is associated with the term "intervention," whereas Rule 19 is exclusively associated with the term "joinder." Nevertheless, as stated above, these Rules do have similarities.
Rule 19 provides for the joinder of a party if that party "claims an interest relating to the subject of the action," and it allows such joinder so that the person can "protect that interest." Rule 19(a)(2). Similarly, Rule 24(a)(2) allows a party to intervene when that party "claims an interest relating to the property or transaction which is the subject of the action," so that the party can "protect that interest."
The similarity of the two Rules seemed to influence the circuit court, because it appears that the court treated the petition for "joinder" under Rule 19(a)(2) as being, in effect, an application for "intervention" as of right under Rule 24(a). It is clear from the record that the circuit court sought to limit Shelia and Marilyn's involvement in the lawsuit brought by Karla. Therefore, we conclude that the circuit court's use of the term "intervention" was intentional and that by using that term the circuit court clearly intended only to allow Shelia and Marilyn to intervene in order to protect their interests in possible proceeds received under the wrongful-death claim.
We note that even if the circuit court had allowed joinder instead of intervention, we would reach the same result because the policy considerations behind the rule allowing joinder are analogous to the policy considerations behind the rule allowing intervention. See, e.g., New York State Ass'n for Retarded Children v. Carey, 438 F.Supp. 440
(E.D.N.Y. 1977); Parikh v. Franklin Medical Center, Inc., 163 F.R.D. 167
(D. Mass. 1995). Having concluded that the circuit court allowed only a limited intervention, we now consider the effects of such a limited intervention under Rule 24.
In Pinto v. Alabama Coalition for Equity, 662 So.2d 894 (Ala. 1995), this Court recognized that parties who are granted intervention for a limited purpose are confined to the purposes of that intervention. In Pinto, the intervenors attempted to argue an issue that had already been adjudicated by the trial court. Id. at 900. This Court noted the effect of a limited intervention and held that persons allowed such an intervention "will not be permitted to reopen or relitigate" issues already adjudicated. Id. The same principle applies here.
By allowing Shelia and Marilyn to intervene for the limited purpose of protecting their interests in any proceeds from the wrongful-death claim, the circuit court effectively foreclosed their attempts to argue other substantive issues. If they disagreed with the circuit court's order limiting their intervention, the proper course for them was to challenge that order, and not to attempt to raise these substantive issues now. See, e.g., Randolph County v. Thompson, 502 So.2d 357 (Ala. 1987). Our conclusion is supported by cases interpreting rules of civil procedure.
Federal courts interpreting Rule 24, F.R.Civ.P., have stated that "[a] nonparty may have a sufficient interest for some issues in a case but not others, and the court may limit intervention accordingly." United States v. South Florida Water Management District, 922 F.2d 704, 707 (11th Cir. 1991), cert. denied sub nom. Western Palm Beach County Farm Bureau v. United States, 502 U.S. 953 (1991). See also Harris v. Pernsley,820 F.2d 592, 599 (3d Cir. 1987), cert. denied sub nom. Castille v. Harris,484 U.S. 947 (1987) (stating that an applicant for intervention "may have a sufficient interest to intervene as to certain issues in an action without having an interest in the litigation as a whole"). Additionally, the Court of Appeals for the District of Columbia Circuit has recognized that "intervention for *Page 849 
individual issues [may be] appropriate to protect particular interests, with the limited nature of the intervenor's interest determining the scope of intervention that should be allowed." United States v. American Telephone Telegraph Co., 642 F.2d 1285, 1291 (D.C. Cir. 1980). These federal cases are instructive because the language of our Rule 24 is "virtually identical" to the language contained in Rule 24 of the Federal Rules of Civil Procedure. See the "Committee Comments" to Rule 24, Ala.R.Civ.P.
Therefore, relying on our own precedent and on federal cases interpreting the similar federal rule, we hold that the circuit court was empowered to grant Shelia and Marilyn a limited intervention into the lawsuit filed by Karla. The purpose of that intervention was solely to protect Shelia and Marilyn's interests in any proceeds acquired as a result of the wrongful-death claim. Therefore, the limitation on the intervention limited Shelia and Marilyn's attempts to question Karla's pursuing her individual claims along with the wrongful-death claim. Accordingly, they are limited to challenging the apportionment of the settlement proceeds. We now review the propriety of the circuit court's apportionment order.
 Standard of Review
"A trial court's judgment, when based upon findings of fact drawn from ore tenus evidence, is presumed correct and should be reversed" only when it is "'found to be plainly and palpably wrong.'" Massey v. Disc Mfg., Inc., 601 So.2d 449 (Ala. 1992). As stated above, the circuit court's apportionment of the settlement proceeds was based upon evidence presented ore tenus. Therefore, we review the apportionment order with the presumption that it is correct.
 Apportionment of the Settlement Proceeds
When parties enter into a settlement agreement, the agreement should be enforced with regard to the parties' intentions. See Pacific Enterprises Oil Co. (USA) v. Howell Petroleum Corp., 614 So.2d 409 (Ala. 1993). See also Nero v. Chastang, 358 So.2d 740 (Ala.Civ.App.), cert. denied,358 So.2d 744 (Ala. 1978). In this present case, the circuit court conducted a hearing for the purpose of determining the intentions of the parties in making the settlement agreement. It is apparent from the circuit court's apportionment order that the court gave great weight to the testimony of defense counsel. Defense counsel specifically testified as to the impetus behind the defendants' settlement offer. This testimony supports the apportionment order, and nothing in the record indicates that the circuit court's apportionment of the settlement proceeds was plainly and palpably wrong.
The circuit court's judgment apportioning $50,000 of the settlement proceeds to be distributed according to § 6-5-410, Ala. Code 1975, is affirmed.
OPINION OF NOVEMBER 6, 1998, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
HOOPER, C.J., and SHORES, KENNEDY, and SEE, JJ., concur