534 So.2d 609 (1988)
ALABAMA FEDERAL SAVINGS AND LOAN ASSOCIATION
v.
Calvin M. HOWARD, as guardian ad litem of the estate of Ronald Gregory Upton, a minor.
ALABAMA FEDERAL SAVINGS AND LOAN ASSOCIATION
v.
Powell LIPSCOMB III, as guardian ad litem of the estate of Michael Steven Upton, a minor.
87-264, 87-265.
Supreme Court of Alabama.
September 30, 1988.
*610 Madison W. O'Kelley, Jr., of Pritchard, McCall, Jones, Spencer & O'Kelley, Birmingham, for appellant.
Carl E. Chamblee, Sr., Gardendale, H. Powell Lipscomb III, Bessemer, guardian ad litem for Michael Steven Upton, a minor.
Calvin M. Howard, Birmingham, guardian ad litem for Ronald Gregory Upton.
STEAGALL, Justice.
This is an appeal by Alabama Federal Savings and Loan Association ("Alabama Federal") from an order of the Circuit Court of Jefferson County, Bessemer Division, denying Alabama Federal's motion to intervene in separate guardianship proceedings pending before that court. We reverse.
On November 13, 1980, Claudia Dahlke was appointed guardian of the separate estates of her two minor sons, Ronald Upton and Michael Upton, by the Probate Court of Jefferson County. On January 15, 1981, upon motion by Dahlke, the proceedings were removed from probate court to the Circuit Court of Jefferson County, Bessemer Division.
In May 1981, Dahlke received on behalf of each ward equal sums of $24,822.88, representing assets of the separate guardianship estates.
On May 22, 1981, substantially all of the guardianship assets were invested with Home Federal Savings and Loan Association ("Home Federal"), which subsequently merged with and became known as Alabama Federal Savings and Loan Association. These funds were deposited in six separate fiduciary accounts, consisting of a checking account, a savings account, and a certificate of deposit for each of the wards.
Each of the savings accounts established on May 22, 1981, initially consisted of $1,000 and each of the certificates of deposit consisted of $23,000. Relatively small amounts were deposited in the checking accounts, and those funds are not disputed by any of the parties. Withdrawals were subsequently made by Dahlke from the savings accounts and certificates of deposit of each ward. The propriety of these withdrawals forms the basis of the litigation that underlies this appeal.
On November 13, 1981, petitions for partial settlement of the guardian's accounts were filed by Dahlke.[1] Upon the filing of these petitions, a guardian ad litem was appointed for each of the minor wards by the trial court. In April 1987, Dahlke filed additional petitions for partial settlement. A hearing was conducted by the trial court on April 28, 1987, whereupon testimony was taken from Dahlke and from her attorney of record, Carl E. Chamblee.
In essence, it was alleged by Dahlke that the estate of the wards was damaged or rendered less valuable because of negligence on the part of Alabama Federal in allowing Dahlke to improperly withdraw funds from the wards' bank accounts. Dahlke asserted that the six bank accounts were established personally and jointly by her and Chamblee, and that they both signed the authorization cards for each account at the same time and in the presence of each other. Chamblee maintained that during the course of the guardianships, he had never executed, signed, or otherwise authorized any disbursements from the accounts, with the exception of small amounts withdrawn from the checking accounts, and that the check he authorized was jointly signed and was drawn to pay initial court costs, guardian ad litem fees, attorney fees, and premiums for guardianship bonds, all as authorized by order of the court. Dahlke asserted that no other checks were ever drawn on the checking accounts and that the funds remaining on deposit therein were diminished over a period of time as monthly service charges were posted by the bank.
Dahlke maintained that the original account authorization cards, signed jointly by her and Carl Chamblee, were left on file with Home Federal Savings and Loan Association, and over the years were either lost, misplaced, destroyed, or otherwise unaccounted for by Home Federal or its *611 successor, Alabama Federal. The signature cards that now purport to control the four major fiduciary accounts, according to Dahlke, were signed in 1983 after representations were made to her by an officer of Alabama Federal that the cards were then and there "back-dated." This assertion is bolstered, she contended, by the name "Alabama Federal Savings and Loan Association" being affirmatively displayed on the cards. It was, moreover, asserted by Dahlke that the two checking account cards, in contrast to the four authorization cards that are in dispute, are legitimate inasmuch as the name "Home Federal Savings and Loan Association" is reflected thereon.
Alabama Federal was not a party to the guardianship proceeding and was therefore not notified thereof nor represented at the hearing. It is the position of Alabama Federal in this appeal that the signature cards that authorize withdrawals from the savings accounts and certificates of deposit legitimately reflect only the signature of Claudia Dahlke. Alabama Federal also asserts that no co-signatures or counter-signatures are reflected on the cards so as to indicate that the accounts are to be jointly controlled or that the signature of someone other than Dahlke is required to authorize withdrawals.
The trial court, in an order dated May 12, 1987, found that Dahlke had appropriated and expended guardianship assets without authority and directed Chamblee to audit the accounts and to make demand upon Alabama Federal for all guardianship funds claimed to be due and owing. On May 13, 1987, Chamblee personally delivered to Alabama Federal demand letters whereby he claimed shortages of $13,000 in each of the savings accounts and $4,000 in each of the certificates of deposit. Chamblee simultaneously filed audit reports with the trial court depicting the alleged shortages.
Alabama Federal subsequently filed separate motions to intervene in the guardianship proceedings. Attached to the motions were interpleader complaints whereby all of the funds held by Alabama Federal in the fiduciary accounts were deposited into the trial court. In the attached complaints, Alabama Federal asserted that each disbursement from the fiduciary accounts had been rightfully made and, in the alternative, that if Alabama Federal had erred in making any disbursement, then it was due a credit for any sums that had been rightfully utilized by Dahlke for the benefit of her minor wards.
By an order dated June 25, 1987, the motions to intervene were denied by the trial court, by an order that provided in pertinent part as follows:
"1. ... The motion to intervene is in response to the allegation by the guardian that the ward's estate had been damaged or rendered less valuable due to the alleged negligence of Alabama Federal in allowing funds to be withdrawn from the ward's estate improperly.
"2. The court finds that a determination of that question would involve a question of law. Further, it is the opinion of the court that a guardianship is not an action at law but rather a special proceeding to allow for the settlement of the ward's estate [citation omitted]. It has been determined under our statutes that the purpose of proceedings to settle a guardian's account is to furnish evidence of the condition of the estate to allow the court to correctly adjudicate the rights of the parties.
"Thus, ... the motion to intervene is denied."
The trial court reserved its jurisdiction over the case for the purpose of entertaining further accountings and conducting other appropriate proceedings, and receiving additional reports from the guardian and her counsel.[2] A motion to alter, amend, or vacate the judgment, pursuant to Rule 59, A.R.Civ.P., was subsequently filed by Alabama Federal. The trial court failing to rule on this motion within 90 days, it was *612 deemed denied by operation of law. Rule 59.1, A.R.Civ.P. This appeal followed. The sole issue presented for our review is whether Alabama Federal is entitled to intervene in the guardianship proceedings pending below.

I
At the outset, we would disagree with the trial court's conclusion that a circuit court proceeding for the settlement of a guardian's account is not an action at law. Procedure in the circuit courts of this state is governed by the Alabama Rules of Civil Procedure. Rule 1, A.R.Civ.P. And in our courts "there shall be one form of action to be known as [a] `civil action.'" Rule 2, A.R.Civ.P. It is moreover explicitly indicated at Alabama Code 1975, § 12-11-40, that "[i]n the administration of estates in the circuit court[s] [of] this state, such court[s], in the exercise of such jurisdiction, shall proceed according to the Alabama Rules of Civil Procedure...." (Emphasis supplied.) It is also significant to note that a guardianship is not enumerated at Rule 81, A.R.Civ.P., as a proceeding in which the rules shall be inapplicable to the extent that practice in such matters shall be provided by statute. While pending in probate court, where, in the absence of statutory equitable jurisdiction, the Rules of Civil Procedure would be inapplicable,[3] a guardianship may indeed be characterized as a "special proceeding." Upon its removal to circuit court, however, where the ultimate disposition will be governed by the Rules of Civil Procedure, a guardianship is nonetheless a "civil action" notwithstanding the technicality and form that may be attributed to the administrative nature of the proceedings when entertained by a probate court. Even prior to the advent of our modern rules, this Court made the following observation:
"The final settlement is strictly a judicial proceeding, having all the elements of a suit at law or in equity; and the decree rendered has the force, finality, and dignity of a judgment at law, or a decree in equity. It ascertains and settles conclusively the extent of the liability of the guardian and the rights of the ward."
Lee v. Lee, 55 Ala. 590, 602 (1876).
The procedural device known as "intervention" is expressly provided for in the Alabama Rules of Civil Procedure. Rule 24, A.R.Civ.P. And because these rules govern the progress of all civil actions in the circuit courts of this state, irrespective of the character of an action prior to its removal to circuit court, we conclude that a third party is not precluded from seeking to intervene in a civil action by the mere fact that intervention in that action would have been improper prior to its removal to circuit court. This is particularly so where such intervention purports to be as a matter of right pursuant to Rule 24(a)(2), A.R. Civ.P.

II
Intervention may exist either as a matter of right or at the discretion of the trial court ("permissive intervention") and is, of course, governed by Rule 24, A.R.Civ. P. The purpose of Rule 24 is to anticipate future litigation, to discourage a multiplicity of lawsuits, and to relieve the intervenor from the possible prejudice of stare decisis in subsequent litigation involving the same questions of law and fact. Finkenbinder v. Burton, 452 So.2d 880 (Ala.Civ.App. 1984). Thus, as a general proposition, Rule 24 is to be liberally construed to allow intervention. Hughes v. Newton, 295 Ala. 117, 324 So.2d 270 (1976); Finkenbinder v. Burton, supra. Alabama Federal sought to intervene in the guardianship proceedings as a matter of right pursuant to Rule 24(a)(2). The trial court's denial of the motion to intervene is, therefore, an appealable order. Dallas County Board of Education v. Henry, 507 So.2d 911 (Ala.1987); Thrasher v. Bartlett, 424 So.2d 605 (Ala. 1982).
Rule 24(a)(2), A.R.Civ.P., provides:
"Upon timely application, anyone shall be permitted to intervene in an action:... (2) when the applicant claims an interest relating to the property or transaction *613 which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
In order to determine whether the trial court erred in denying Alabama Federal's motion to intervene, we must first determine whether Alabama Federal has an "interest" in the pending action as contemplated by Rule 24(a)(2). Dallas County Board of Education v. Henry, supra; United States Fidelity & Guaranty Co. v. Adams, 485 So.2d 720 (Ala.1986). The trial court, as previously indicated, concluded that Alabama Federal did not have such an "interest," characterizing an action for the settlement of a guardian's account as a "special proceeding." We disagree with this conclusion.
In the instant case, Alabama Federal asserts that it has a property interest in the deposited funds (the assets of the guardianship) because of the debtor-creditor relationship that exists between it and the guardian, Dahlke. Upon the creation of this relationship, legal title to the funds deposited became vested in Alabama Federal. State National Bank of Decatur at Oneonta v. Towns, 36 Ala.App. 677, 62 So.2d 606 (1952); Batson v. Alexander City Bank, 179 Ala. 490, 60 So. 313 (1912). Alabama Federal submits that it, therefore, has a vital interest in the settlement of the guardianship estates and, in the absence of intervention, is so situated that the settlements may as a practical matter impair or impede its ability to protect that interest. The nexus or link between this interest and the pending settlement proceedings is aptly stated by counsel for Alabama Federal in its appellate brief:
"[I]f Alabama Federal improperly permitted the guardian, Claudia Dahlke, to withdraw funds from the guardianship accounts, on settlement of the guardianships Claudia Dahlke is due to [be] credited with the amounts of any funds so withdrawn which were properly expended by her for the use and benefit of her minor wards, and any such credits would ultimately enure to the benefit of Alabama Federal in the event it was subsequently called upon in a separate action to account to the wards. Since a guardianship proceeding is the only action or proceeding in which the ultimate liability to the ward is ascertained and proper credits issued, it is obvious that Alabama Federal will be greatly prejudiced if it is not permitted to intervene so as to conduct discovery and furnish proof as to the authority for the withdrawals and the manner in which the withdrawn funds were applied."
As previously indicated, the trial court, in settling the guardianship estates, will necessarily determine the extent of Dahlke's liability to her wards. Such a determination, Alabama Federal maintains, will not later be subject to collateral attack. We have found no reported decisions of the Alabama appellate courts dispositive of the question of intervention as it is presented in the procedural and factual posture of the instant case. The Committee Comments to Rule 24, A.R.Civ.P., however, state the following:
"This rule is virtually identical with Rule 24, F.R.C.P. The only differences are the deletions of matters not relevant to state practice.
". . . .
"The federal counterpart of Rule 24(c) has been construed to relax the requirements for a showing of a right to intervene. An earlier version of Rule 24 contained reference to being `bound by a judgment,' suggesting that the applicant was required to show an impairment of his interest by operation of the doctrine of res judicata. Now, the rule refers to impairment of interest `as a practical matter' as adequate justification for intervention. This recognizes the impediment posed by stare decisis in later litigation involving the same questions of law and fact to which the unsuccessful applicant for intervention is finally a party. This broadening is confirmed in Cascade Natural Gas v. El Paso Natural Gas, 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed. 2d 814 (1967), wherein several parties, *614 including the state of California, were permitted to intervene as a matter of right in a proceeding to frame a divestiture decree in an anti-trust case. Hence, there appears to be a recognition of interests other than immediate injury or loss to property as justification for intervention." [Emphasis supplied.]
The Alabama Rules of Civil Procedure are based upon, and are virtually identical to, the Federal Rules of Civil Procedure. A presumption therefore arises that cases construing the federal rules are authority for construing the Alabama rules. Ex parte Duncan Construction Co., 460 So. 2d 852 (Ala.1984).
Under the facts and circumstances of this case, it is logical to assume that Alabama Federal could be called upon at some future time to defend an action by the wards based upon the judgments of final settlement rendered by the trial court in the guardianship proceedings. Such future litigation will obviously involve the same or substantially the same questions of law and fact as those presented in the instant case. And in the matter at bar, the claim against the guardian is somewhat difficult to separate from a potential future claim the wards might bring against Alabama Federal: Dahlke acknowledges that she withdrew the deposited funds, but at the same time she imputes negligence to Alabama Federal, asserting that Alabama Federal allowed her to do it.
If the trial court in the instant case determines that Dahlke did not use any of the withdrawn amounts for the benefit of the wards, the liability of Alabama Federal in a future action brought on behalf of the wards could be greater than it would be if deductions are made for amounts found to have been improperly withdrawn by Dahlke but nevertheless expended for the benefit of the minor wards. Indeed, with or without the intervention of Alabama Federal, the trial court might well determine that none of the amounts improperly withdrawn by Dahlke were spent for the benefit of the wards.
As an intervening party, however, Alabama Federal would have the right to conduct discovery, and any discovery conducted by Alabama Federal would no doubt advance the ultimate goal of the settlement proceedings, which is to conclusively ascertain the liability of the guardian and the rights of her wards. Lee v. Lee, supra. Alabama Federal could thus develop evidence that tends to show whether Dahlke spent any of the improperly withdrawn funds for the benefit of the wards.
The "interest" of Alabama Federal in this guardianship proceeding, then, is quite simply the avoidance of a larger judgment that might be suffered in the event an action is brought on behalf of the wards against Alabama Federal at some future time. The only way to protect this interest from impairment "as a practical matter" is for Alabama Federal to furnish proof, by perpetuating evidence by discovery, that Dahlke applied all or part of the withdrawn funds for the benefit of the minor wards.
In the instant case, the requirements mandating intervention as a matter of right, as enumerated at Rule 24(a), A.R. Civ.P., have been clearly met: Alabama Federal's applications for intervention were timely made; the guardianship proceedings are "actions" as contemplated by Rule 24(a); Alabama Federal claims and, in fact, has an interest in the property that is the subject of the guardianship proceedings; Alabama Federal claims an interest in the transaction that is the subject matter of the guardianship settlements; Alabama Federal is so situated that, in the absence of intervention, the disposition of the settlement proceedings may, as a practical matter, impair or impede its ability to protect its interest; and Alabama Federal is not adequately represented by the existing parties to the litigation.
We thus conclude that under the extraordinary facts and circumstances presented by this case, a sufficient justification for intervention has been shown. There being no just reason for denying Alabama Federal's motion to intervene, the judgment of the trial court is accordingly reversed, and the case is remanded with instructions to enter an appropriate order consistent with this opinion.
*615 REVERSED AND REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.
NOTES
[1] Alabama Code 1975, § 26-5-2.
[2] Final settlement of a guardian's account is governed generally by Alabama Code 1975, § 26-5-7.
[3] See Committee Comments to amendment to Rule 1(a), A.R.Civ.P.