[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1275 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1276 
Edward R. Braden was employed as a police officer with the City of Hoover from 1983 to 1994. The highest rank he achieved was police sergeant. From 1995 to 1997, he was employed as director of public safety for the City. In 1997, the City passed a resolution discontinuing the funding of Braden's position as public safety director. Braden asserts that funding was ceased due to "political infighting." The resolution also provided that Braden would be employed by the City at the rank of police sergeant. Braden declined the position and his employment with the City was terminated on November 5, 1997. *Page 1277 
On March 30, 1998, he sued the city council, alleging, among other things, wrongful termination and violations of his due process rights. On November 15, 1999, the city council passed a resolution amending certain portions of its personnel policies. On December 6, 1999, the city council, by a 3 to 2 vote, passed a resolution, employing Braden as a captain in the City's police department. Council members Barbara McCollum and Jack Wright voted against adopting the resolution. On December 22, 1999, Braden and the City entered into a settlement agreement; pursuant to the agreement Braden agreed to dismiss his claims against the City, and the City agreed to employ Braden as a police officer at the rank of captain. On January 13, 2000, Braden and the City filed a stipulation of dismissal, seeking a dismissal with prejudice all of Braden's claims.
On December 20, 1999, Ralph D. Long, a City police officer holding the rank of lieutenant, sued the City and the members of the city council in their official capacity, seeking to enjoin the City from employing Braden at the rank of captain and to request the City to employ the most qualified person as captain; he argued that by hiring Braden as captain the City was violating its civil service merit system and that he should be considered for the position. On January 5, 2000, several taxpayers sued the City and the members of the city council in their official capacity, seeking to prohibit the City from violating its civil service merit system, by enjoining enforcement of Braden's settlement agreement.
On January 11, 2000, the trial court held a hearing on Long's motion for a preliminary injunction. On January 12, 2000, the City and all the defendants, except Barbara McCollum, who was separately represented by Steve Griffin, moved to consolidate Long's action and the taxpayers' action. On February 2, 2000, McCollum filed a cross-complaint against the City and the other members of the city council alleging that if she was liable to Long, she was liable because the City and the other members of the city council had violated the City's civil service merit system.
The City opposed the preliminary injunction, arguing, among other things, that Braden had been properly employed as a police captain pursuant to the settlement agreement. On February 15, 2000, the trial court denied Long's motion for a preliminary injunction. On March 2, 2000, the trial court consolidated the two cases. In September 2000, Barbara McCollum was elected mayor of the City. The elections also changed the composition of the city council. Subsequently, Steve Griffin, who had been representing McCollum, filed a notice of appearance on behalf of all of the defendants. On November 15, 2000, the parties agreed to submit the case for mediation.
A letter from Long's attorney indicates that the parties agreed to the essential terms of a settlement as a result of mediation on April 5, 2001. However, the mediator did not reduce the settlement to writing until June 1, 2001. The terms of the settlement included demoting Braden from captain to lieutenant.
On April 16, 2001, Long, who is also an attorney, filed a motion, stating that he had asked Gray to withdraw as his counsel and that he wanted to enter a notice of appearance. On April 19, 2001, Long filed an amended complaint, alleging negligence, defamation, and fraud against the members of the city council individually, certain City employees, and Braden, and seeking compensatory and punitive *Page 1278 
damages.[1] Long's complaint arose out of certain communications made during the hearing on the preliminary injunction relating to his service record as a police officer and his qualifications for the position of police captain. On May 22, 2001, the members of the city council, the City employees, and Braden moved to dismiss Long's amended complaint because of failure to properly serve the defendants. On June 11, 2001, Long moved for a declaratory judgment. Following a hearing, the trial court, on June 12, 2001, found that the motion to dismiss was premature because the defendants had not been properly served with the amended complaint. The trial court denied Long's motion for a declaratory judgment. On July 10, 2001, the City moved to enforce the June 1, 2001, settlement agreement. On August 13, 2001, the parties agreed to dismiss Long's amended complaint without prejudice. On August 14, 2001, Long filed a second amended complaint against the city council members individually, certain City employees, and Braden, seeking compensatory and punitive damages, again based on the communications made during the litigation relating to Long's qualifications for the position of police captain.
On August 20, 2001, the trial court rendered a "final decree" enforcing the settlement agreement reached by the parties, which was entered by the clerk of the court on August 23, 2001. On August 21, 2001, the trial court entered an order dismissing Long's first amended complaint based upon the parties' agreement. The court noted that Long's second amended complaint remained pending.
On September 6, 2001, Braden moved to intervene as a matter of right pursuant to Rule 24(a), Ala.R.Civ.P.; he challenged his demotion. On September 7, 2001, he sued the City.[2] Braden also filed a petition for a writ of mandamus with this court, seeking a stay of his demotion, which the trial court denied on September 13, 2001. On September 14, 2001, the supreme court entered an order that stated, in part:
 "It is further ordered that the order of August 20, 2001, entered by Judge Jack Carl in the Circuit Court of Jefferson County, Alabama is stayed pending the disposition of this petition for writ of mandamus, but the hearing currently scheduled for September 25, 2001, on petitioner's motion to intervene is not stayed."
On December 28, 2001, the supreme court denied Braden's petition for a writ of mandamus. On January 2, 2002, Braden filed a Rule 60(b), Ala.R.Civ.P., motion for relief from the August 20, 2001, judgment. On January 9, 2002, Long filed a response, and also filed a Rule 60(b) motion of his own. In his Rule 60(b) motion, Long alleged that fraud and misconduct on the part of his former attorney and Steve Griffin, an attorney for the defendants, warranted relief from the judgment. On January 10, 2002, Long filed his notice of appeal. On February 6, 2002, the trial court denied Braden's motion to intervene, from which Braden timely appealed. The trial court did not rule on Braden's Rule *Page 1279 
60(b) motion or on Long's Rule 60(b) motion. On February 27, 2002, the trial court purported to enter a summary judgment in favor of the defendants on all of the remaining claims. Long moved to consolidate his appeal with Braden's. We granted the motion.
 Long's Appeal
The City argues that Long's appeal is untimely, because it was not filed within 42 days of the August 20, 2001, order enforcing the settlement agreement. Long argues that he is appealing from the trial court's error in failing to grant him relief from the judgment pursuant to Rule 60(b)[3] and, therefore, that his appeal is timely because he is seeking relief under Rule 60(b) and not a direct appeal from the August 20, 2001, order.
None of the parties has questioned this court's jurisdiction; however, we must first consider whether we have jurisdiction over this appeal, because "`jurisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.'" Wallace v. TeeJays Mfg. Co., 689 So.2d 210, 211 (Ala.Civ.App. 1997), quoting Nunn v.Baker, 518 So.2d 711, 712 (Ala. 1987).
The August 20, 2001, order enforcing the settlement was not a final judgment. Long's second amended complaint, which sought compensatory and punitive damages, was still pending. On February 27, 2002, the trial court purported to enter a summary judgment in favor of the defendants on all the pending claims.
When the trial court granted the defendants' motion to enforce the settlement agreement, it specifically noted that Long's second amended complaint — wherein he sued the city council members individually and added new parties — was still pending. Because claims were undecided, there was no final judgment.
A settlement agreement is conclusive of all elements of the claim except those specifically reserved by the parties. Nero v. Chastang,358 So.2d 740 (Ala.Civ.App. 1978). In Whitfield v. Murphy, 475 So.2d 480
(Ala. 1985), the daughter and her mother, as her next friend, sued the city and its officers, alleging false imprisonment. At trial, the mother sought to amend her complaint to include her individual claim of false imprisonment. The trial court granted the defendants' motion to strike the amendment. The supreme court held that the daughter's appeal was rendered moot because she had entered into a settlement with the city. However, the mother's settlement with the city did not render her appeal moot because the settlement agreement, by its explicit terms, preserved the mother's separate claims and actions pending against two police officers.
An appeal ordinarily lies only from a final judgment. Ala. Code 1975, § 12-22-2; Bean v. Craig, 557 So.2d 1249, 1253 (Ala. 1990); Christianv. Christian, 738 So.2d 1275, 1276 (Ala.Civ.App. 1999). In other words, "A final judgment is necessary to give jurisdiction to this court on appeal." Marsh v. Wittmeier, 280 Ala. 172, 173, 190 So.2d 920, 920
(1966). An order is generally not final unless it disposes of all claims or the rights or liabilities of all parties. Ex parte Harris,506 So.2d 1003, 1004 (Ala.Civ.App. 1987).
The purpose of Rule 54(b), Ala.R.Civ.P., is to make final "an order which does not adjudicate the entire case but as to which there is no just reason for delay in the attachment of finality." Foster v. Greer Sons, Inc., 446 So.2d 605, 609 *Page 1280 
(Ala. 1984), overruled on other grounds, Ex parte Andrews, 520 So.2d 507
(Ala. 1987).
 "Three requirements must be satisfied before Rule 54(b) can properly be applied to certify a judgment as final for purposes of appeal: 1) there must be either multiple claims for relief or multiple parties involved; 2) there must be a final decision as to one of the claims or as to the rights and liabilities of one of the parties; and 3) the court must determine that there is no just reason for delay. Williams v. Fogarty, 727 So.2d 831, 832 (Ala.Civ.App. 1999); Parrish v. Blazer Fin. Servs., Inc. 682 So.2d 1383, 1385 (Ala.Civ.App. 1996). Rule 54(b) certifications should be granted only in exceptional cases and should not be entered routinely. Parrish, 682 So.2d at 1385. Furthermore, if a certification of finality is not authorized by Rule 54(b), it is wholly ineffective. Williams, 727 So.2d at 832-33."
Ann Corp. v. Aerostar World, Inc., 781 So.2d 231, 234 (Ala.Civ.App. 2000).
The Alabama Supreme Court in Parsons v. Bank Leumi Le-Israel, B.M.,565 So.2d 20, 26 (Ala. 1990), stated with regard to Rule 54(b):
 "When the issues raised in a complaint containing multiple claims are directly related to, and intertwined with, each other to such a degree that a separate adjudication of one of those claims would pose an unreasonable risk of inconsistent results on the adjudication of the remaining claims, then, of course, the entry of a final judgment as to that claim would be an abuse of discretion by the trial court."
Long's appeal, although premature because it was not from a final order, divested the trial court of jurisdiction over the case. "`Once an appeal is taken, the trial court loses jurisdiction to act except in matters entirely collateral to the appeal.'" Horton v. Horton, [Ms. 2000509, December 7, 2001] 822 So.2d 431, 434 (Ala.Civ.App. 2001), quoting Ward v. Ullery, 412 So.2d 796, 797 (Ala.Civ.App. 1982). Long's notice of appeal had the effect of divesting the trial court of jurisdiction to rule on his remaining claims. Therefore, the trial court's judgment of February 27, 2002, is a nullity because of Long's appeal.
 Braden's Appeal
Braden appeals from the denial of his motion to intervene.[4]
"`Intervention . . . is a method by which an outsider with an interest in a lawsuit may come in as a party on his own application.'" Marcum v.Ausley, 729 So.2d 845, 848 (Ala. 1999), quoting Duncan v. First Nat'lBank of Jasper, 573 So.2d 270, 274 (Ala. 1990). The trial court's denial of a motion to intervene is an appealable order. Dallas County Bd. ofEduc. v. Henry, 507 So.2d 911 (Ala. 1987); Thrasher v. Bartlett,424 So.2d 605 (Ala. 1982). In general, the grant or denial of a motion to intervene is within the sound discretion of the trial court and a ruling on such a motion will not be reversed on appeal absent an abuse of that discretion. Valley Forge Ins. Co. v. Alexander, 640 So.2d 925 (Ala. 1994).
The purpose of intervention is to "`anticipate future litigation, to discourage *Page 1281 
a multiplicity of lawsuits, and to relieve the intervenor from the possible prejudice of stare decisis in subsequent litigation involving the same questions of law and fact.'" Mars Hill Baptist Church of Anniston,Alabama, Inc. v. Mars Hill Missionary Baptist Church, 761 So.2d 975, 979
(Ala. 1999), quoting Root v. City of Mobile, 592 So.2d 1051, 1053 (Ala. 1992). In an appeal from the denial of a motion to intervene, the appellate court does not rule on the merits of the underlying case; however, the court must discuss the underlying case in addressing the propriety of intervention. Valley Forge, supra, 640 So.2d at 929, fn. 3.
Rule 24(a), Ala.R.Civ.P., which governs intervention as a matter of right, states in pertinent part:
 "(a) Intervention of Right. Upon timely application, anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
A "practical" rather than a "technical" approach measures the doctrine of intervention as a matter of right pursuant to Rule 24(a)(2). RandolphCounty v. Thompson, 502 So.2d 357, 363 (Ala. 1987), citing State ex rel.Wilson v. Wilson, 475 So.2d 194, 196 (Ala.Civ.App. 1985).
In the present case, the trial court treated the motion as one for permissive intervention. The court determined that because the parties had entered into a settlement agreement, which the court upheld in an order issued on August 20, 2001, Braden's motion to intervene was untimely. The court stated that Braden knew of Long and the taxpayers' lawsuits challenging the validity of his own settlement agreement appointing him as captain and that he should have intervened before Long and the taxpayers settled their lawsuits with the City.
The trial court erred in treating the motion as one for permissive intervention. Braden's motion clearly seeks intervention as a matter of right because of his legally protectable interest in his own settlement agreement with the City on December 22, 1998. "`[T]he intervenor must have an interest in the subject matter of the litigation of such a nature that he will gain or lose by the direct legal operation of the judgment.'" Valley Forge v. Alexander, 640 So.2d at 931, quoting Watersv. Jolly, 582 So.2d 1048, 1057 (Ala. 1991). The subject matter of the litigation is Braden's employment as police captain with the City. Braden will lose his position as captain — a position to which he was appointed pursuant to a contract with the City resulting from a settlement agreement in exchange for the dismissal of his claims against the City — if he is not allowed to intervene in the actions by Long and the taxpayers against the City. Therefore, Braden has a "direct, substantial, and legally protectable interest," Randolph County v.Thompson, 502 So.2d at 363, pursuant to Rule 24(a)(2), Ala.R.Civ.P. Cf.Randolph County v. Thompson, 502 So.2d 357 (county was allowed to intervene as matter of right in sheriff's declaratory-judgment action seeking an appointment as a supernumerary sheriff); Ford v. Mills,784 So.2d 315 (Ala.Civ.App. 2000) (partners were allowed to intervene as a matter of right in partnership's bankruptcy proceeding); see alsoKleissler v. United States Forest Service, 157 F.3d 964 (3d Cir. 1998) (school districts could intervene *Page 1282 
as a matter of right in a suit brought by environmentalists to restrict logging in a national forest, when state law provided that districts would receive revenues from timber harvesting); United States v. City ofChicago, 870 F.2d 1256 (7th Cir. 1989) (white female sergeants on Chicago police force were entitled to intervene as a matter of right in a discrimination suit to challenge district court's order approving promotions to lieutenant on the basis of "racially altered" test results).[5]
As the supreme court noted in Valley Forge, "[t]imeliness is the first condition that must be met in order to intervene." 640 So.2d at 928. That court also recognized that by its very nature, a motion to intervene as a matter of right is more compelling than one for permissive intervention and, therefore, the court requires less rigidity in evaluation of timeliness when the intervention is as of right. Id.
In Hale v. Osborn Coal Enterprises, Inc., 729 So.2d 853 (Ala.Civ.App. 1997), contiguous or nearby landowners filed a Rule 60(b), Ala.R.Civ.P., postjudgment motion in 1996, seeking to intervene in an action in which the town and the coal-mining company had sought and received court approval of a settlement in 1993. This court held that the motion to intervene was timely where the record was devoid of any evidence that the town had published the terms of the settlement before, or after, it entered into that agreement. The landowners did not learn of the settlement and its terms until some three years after the judgment was entered. H.H.B., L.L.C. v. D F, L.L.C., [Ms. 1001925, May 24, 2002]843 So.2d 116 (Ala. 2002), involved a motion to intervene by a company that owned land. Our supreme court held that the trial court did not abuse its discretion in allowing the intervention where the company, as a landowner, did not intervene until the eve of trial because it did not know that it had a right to intervene and because it did not know that a trial date had been set.
Braden's motion to intervene was filed while claims remained pending between the parties in the action in which he sought to intervene. He filed his motion to intervene upon learning that the City had repudiated its December 22, 1999, settlement agreement with him, and therefore, was no longer representing his interest.
In determining whether a motion to intervene is timely, the trial court must consider any prejudice to the would-be intervenor if intervention is not allowed. The supreme court in Root, supra, stated:
 "[B]ecause the rule itself is silent concerning what constitutes a `timely application,' it has long been held that the determination of timeliness is a matter peculiarly within the sound discretion of the trial court. In exercising its discretion in this regard, the trial court must take into consideration that in a situation where intervention is sought as a matter of right, the interest of the would-be intervenor may be seriously prejudiced if he is not allowed to participate in the action."
592 So.2d at 1053. Braden would be "seriously prejudiced" if he is not allowed to intervene; the viability of his settlement with the City is in doubt, and the claims he dismissed with prejudice will be barred if he is not allowed to participate in the *Page 1283 
action by Long and the taxpayers against the City.
While the trial court must consider whether the would-be intervenor would be seriously prejudiced if he is not allowed to participate, the court must also consider whether the fact that the would-be intervenor failed to apply for intervention as a matter of right sooner would prejudice the existing parties if intervention is allowed. Root, 592 So.2d at 1053. It is not prejudice resulting from the intervention itself that is considered, but prejudice resulting from any delay in intervening as a matter of right as soon as the would-be intervenor knew or should have known of the interest in the case that the court should address. Rule 24(b), regarding permissive intervention specifically provides that the court should consider any undue delay or prejudice to the existing parties in determining whether to allow intervention. The United States Court of Appeals for the Fifth Circuit in Stallworth v. Monsanto Co.,558 F.2d 257 (5th Cir. 1977),[6] recognized that no such requirement is included in Rule 24(a), intervention as a matter of right. That court held:
 "Since a similar provision is not included in section (a) of the Rule, it is apparent that prejudice to the existing parties other than that caused by the would-be intervenor's failure to act promptly was not a factor meant to be considered where intervention was sought under section (a). Therefore, to take any
prejudice that the existing parties may incur if intervention is allowed into account under the rubric of timeliness would be to rewrite Rule 24 by creating an additional prerequisite to intervention as of right. Moreover, since section (b) provides that prejudice to the original parties must be considered when permissive intervention is sought, to take that same type of prejudice into account in the determining of timeliness would be to consider the same factor twice."
558 F.2d at 265. Braden moved to intervene within 14 days of entry by the court clerk of the order demoting him from captain to lieutenant. Before then, he did not know and would have had no reason to think that the City would repudiate the settlement agreement that it had with him.
In Stallworth, supra, the Fifth Circuit Court of Appeals held that a trial *Page 1284 
court should consider unusual circumstances weighing for or against a determination that the motion to intervene was timely. Courts have recognized that a motion to intervene made at the conclusion of a case may still be timely if the proposed settlement or resolution of the case creates the circumstances requiring the intervention. In Atlantic MutualInsurance Co. v. Northwest Airlines, Inc., 24 F.3d 958, 960 (7th Cir. 1994), the United States Court of Appeals for the Seventh Circuit stated:
 "We may assume that settlement of litigation by the original parties is not conclusive if a third party possessing an interest in `the property or transaction which is the subject of the action' has been excluded from the negotiations. Intervention permits such an entity to prevent the original litigants from bargaining away its interests. If they beat the intervenor to the punch, the court may annul the settlement in order to give all interested persons adequate opportunity to participate in the negotiations and proceedings."
See United States v. Yonkers Bd. of Educ., 902 F.2d 213 (2d Cir. 1990) (city park board members' motion to intervene after a court order revoked dedicated park land so land could be as a junior high school was timely, because board members could not have been aware that their interest in preserving the state legislative process was threatened until the court issued its order, however, their motion to intervene was denied because their interests were adequately represented by the city); see alsoDangberg Holdings Nevada, L.L.C. v. Douglas County, 115 Nev. 129,978 P.2d 311 (1999) (the state and the estate of the ranch seller's daughter could intervene after a settlement between the buyer of the ranch and the county where the intervenors acted within two months of learning of the purported settlement); Miller v. Lankenau Hosp.,152 Pa. Commw. 266, 618 A.2d 1197 (1992) (department of public works was allowed to intervene more than one year after settlement in a Medicaid recipient's malpractice action in order to assert a claim for medical benefits paid on behalf of the recipient where the department had not been properly notified of the settlement); Matter of Stanford Assocs. v.Board of Assessors of Town of Niskayuna, 39 A.D.2d 800, 332 N.Y.S.2d 286
(1972) (where the motion to intervene was made promptly after learning of the settlement, the school district was entitled to late-stage intervention in the proceeding to review property tax assessment on a shopping center even though the motion came after the settlement reducing the property tax); Shlensky v. South Parkway Bldg. Corp.,44 Ill. App.2d 135, 194 N.E.2d 35 (1963) (intervention after a final settlement was held timely where representation did not become inadequate until after remand by the supreme court of the stockholder's derivative suit when it became apparent that stockholders were acting in their own interest rather than in the interests of the corporation).
Braden's motion to intervene as a matter of right must be regarded as timely, because it was not until he learned of the August 20, 2001, order enforcing the settlement agreement that he knew his interests had been prejudiced. Now we must address whether Braden's ability to protect his interest has been impaired and whether his interests were adequately represented by any of the existing parties to the litigation.
Braden is "so situated that the disposition of the action [by Long and the taxpayers against the City] may as a practical matter impair or impede" his ability to protect his interest in his position as captain. Rule 24(a)(2). Long and the taxpayers negotiated with the City to settle *Page 1285 
their claims regarding, among other things, Braden's appointment as police captain. Those negotiations, along with approval of the settlement on August 20, 2001, impeded Braden's ability to protect his interest in remaining employed as a police captain. Braden executed a release when he signed his settlement agreement regarding his wrongful-termination action. He would be barred from bringing a subsequent action on those claims. He would be unfairly disadvantaged if he is demoted from captain, contrary to his bargained-for exchange in releasing the City from liability, before being given the opportunity to assert his interest in the matter. Impairment of an interest under Rule 24(a) recognizes that the doctrine of res judicata would bar later litigation involving the same questions of law and fact. Cf. Alabama Federal Savings LoanAss'n v. Howard, 534 So.2d 609 (Ala. 1988) (bank had an interest in guardianship proceedings warranting intervention as a matter of right where future litigation would involve the same questions of law and fact).
Braden's interests were not adequately represented by any of the existing parties to the litigation. In Root v. City of Mobile, supra,592 So.2d 1051, the city entered into a contract with Midsouth Land Company for a joint development of property. Midsouth later sold part of its interest in the project to C.B. Root. Root later transferred his interest to a trust. The city sued Midsouth for breach of contract. Root, on behalf of the trust, moved to intervene. The court held that the interests of the trust were "nearly identical" to that of Midsouth and, therefore, that Midsouth would adequately represent the trust's interests. 592 So.2d at 1053. See also Richards v. Izzi, [Ms. 1992027, October 12, 2001] 819 So.2d 25 (Ala. 2001) (class representatives were not allowed to intervene in action challenging the constitutionality of a county occupational tax exemption where their interests were adequately represented by the county and by representatives in another class action challenging the law).
In the present case, the City originally defended its appointment of Braden as police captain. At that point, Braden's interests were adequately represented by the City. However, the change in the makeup of the city council during the course of the litigation obviously caused a change in the City's position regarding Braden's appointment as captain. Braden did not know, until he learned of the August 20, 2001, order demoting him, that the City was not representing his interest. Cf. Clarkv. Putnam County, 168 F.3d 458 (11th Cir. 1999) (six black voters were allowed to intervene in an action brought by four white voters against the county and county commission challenging the voting district plan because their interests were not adequately represented by the county commissioners); Edwards v. City of Houston, 78 F.3d 983, 1005 (5th Cir. 1996) (police officers' unions were allowed to intervene in a discrimination action challenging hiring, transfer, and promotion policies because the unions had a "sharp disalignment" of interests from the city and from the minority plaintiffs).
 Conclusion
Long's appeal from the trial court's August 20, 2001, order was premature, and Braden's motion to intervene should have been granted. Although we would normally remand Long's appeal for the trial court to determine whether it would be appropriate to make the August 20, 2001, order final pursuant to Rule 54(b), Ala.R.Civ.P., or to adjudicate Long's remaining claims, Braden should have been part of the negotiations regarding his demotion from captain to lieutenant included in the August 20, 2001, order. Therefore, we dismiss the appeal in case no. 2010354 and in case no. *Page 1286 
2010569 we reverse the order denying Braden's motion to intervene and remand the case for the trial court to allow Braden to intervene to protect his interest and to prevent the City from bargaining away his interest without an opportunity to participate in the proceedings.
2010354 — APPEAL DISMISSED.
2010569 — REVERSED AND REMANDED.
Pittman, J., concurs.
Thompson, J., concurs in the result.
[1] Rule 15(a), Ala.R.Civ.P., allows a party to "amend a pleading without leave of court, but subject to disallowance on the court's own motion or a motion to strike of an adverse party, at any time more than forty-two (42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires." Because the parties were in nonbinding mediation, no trial date had been set.
[2] The City moved to consolidate Braden's action filed on September 7, 2001, with the present action. The trial court never ruled on the motion, and Braden's separate action was not consolidated with the cases that are here on appeal.
[3] The trial court never ruled on Long's Rule 60(b) motion.
[4] Although Braden was made a defendant to Long's second amended complaint involving defamation claims, he was not added as a party until after Long and the taxpayers had essentially agreed to the terms of the settlement regarding Braden's appointment as captain. We note that intervention may be granted for a limited purpose. See Marcum v. Ausley,729 So.2d 845 (Ala. 1999) (daughters were allowed to intervene in their sister's action alleging fraud and wrongful death as to their mother for the limited purpose of protecting their interests in any proceeds from the wrongful-death claim).
[5] "The Alabama Rules of Civil Procedure are based upon, and are virtually identical to, the Federal Rules of Civil Procedure. A presumption therefore arises that cases construing the federal rules are authority for construing the Alabama rules." Alabama Fed. Sav. LoanAss'n v. Howard, 534 So.2d 609, 614 (Ala. 1988).
[6] Stallworth involved a Title VII suit by black employees against their employer, Monsanto. The would-be intervenors were certain white employees. The black employees challenged Monsanto's use of departmental seniority to determine eligibility for promotions, vulnerability to layoffs and rollbacks (a rollback avoids outright layoffs by transferring employees to lower-paying job classifications), and priority for shift and job promotions. Approximately two years after the suit was filed, the court entered a consent decree based on a partial settlement, which provided for abolition of departmental seniority and a switch to a system of plant seniority plus certain residency requirements. By virtue of the consent decree, some white employees were rolled back, while other employees, white as well as black, were not. The would-be intervenors moved to intervene within three weeks of the implementation of the consent decree. The trial court denied the motion as untimely. On appeal, the Fifth Circuit Court of Appeals set out "specific guidelines to govern the process by which the timeliness issue should be resolved." 558 F.2d at 264. Those timeliness factors are: (1) the length of time the intervenor knew or should have known of its interest in the case before moving to intervene; (2) the prejudice to the existing parties, if intervention is granted, resulting from the intervenor's delay in applying for intervention as soon as he actually knew or reasonably should have known of his interest in the case; (3) prejudice to the intervenor if the motion is denied; and (4) any unusual circumstances weighing for or against a determination that the application is timely. Many courts have relied on the timeliness factors set out in Stallworth. 6 James W. Moore et al., Moore's Federal Practice § 24.21[3] (3d ed. 1997).