James L. Gunter ("the husband"), in his individual capacity, appeals from an order denying his motion to alter, amend, or vacate a judgment of divorce or, in the alternative, for a new trial, as to a judgment divorcing him from Vicki L. Gunter ("the wife"). The husband, in his capacity as executor of the estate of Olive S. Gunter, and as next friend of Victoria Gunter, the minor daughter of the husband from a previous marriage, appeals from an order denying a motion to allow Victoria Gunter to intervene in the divorce proceeding. and to alter, amend, or vacate the divorce judgment, or, in the alternative, for a new trial and denying a Rule 60(b), Ala. R. Civ. P., motion.
The husband initiated the divorce proceeding by filing a complaint for a divorce from the wife and sought custody of their minor son, child support, the property owned by the parties, real or personal, and an attorney fee. The wife answered and counterclaimed seeking a divorce, custody of the minor child, child support, all real and personal property owned by the parties, and an attorney fee. The husband propounded interrogatories to the wife specifically asking whether she had "had sexual relations with any individual or individuals other than [her] spouse." The wife submitted sworn answers to the interrogatories and responded "No" to the above question. Both parties submitted a CS-41 Child Support Obligation Income Statement/Affidavit form. See Rule 32, Ala. R. Jud. Admin.
After ore tenus proceedings, the trial court entered a judgment of divorce. The trial court awarded the parties joint legal custody of their minor son but awarded sole physical custody to the wife. The trial court awarded the husband specific visitation with the child and ordered the husband to pay $700 per month as child support. On the CS-42 Child Support Guidelines form prepared by the trial court, the trial court noted that it was deviating from the Rule 32, Ala. R. Jud. Admin., child-support guidelines because the husband's "health insurance is currently being paid by or on behalf of a third party." The trial court ordered that the marital residence be sold and that the proceeds of the sale be divided equally between the husband and the wife. The *Page 706 
trial court awarded the wife certain items of personal property:
 "Christmas china; grandmother's china; upstairs bedroom — picture of [the child] and Victoria; love seat in bedroom; master bedroom — iron bed; lamps; all pictures of [the child]; mirror on wall; picture above bed; den-television; all pictures of [the child] on shelves; all pictures; mirror above couch; black clock; [wife's] books on fireplace; stereo; cabinet; Cowboy picture of [the child]; iron tables in attic; Christmas tree; Christmas decorations; [husband's office] — blue couch; loveseat; ottoman; computer; [the child's] computer programs; rocking chair; fax machine; dining room — vase and stand; candle sticks on ottoman; lady lamp with children; washer; dryer; all of [the child's] personal belongings, effects and furniture."
The trial court awarded the husband the personal items in his possession except for those items awarded to the wife, his 2002 Cadillac automobile, a houseboat, his business, his interest in certain pieces of real property, and the mortgage payments due on a certain piece of real property. The trial court ordered the husband to pay the wife's attorney a $12,000 attorney fee. The trial court purported to name the wife as custodian of a $36,000 investment account that belonged to Victoria Gunter, the husband's minor daughter from a previous marriage, on which the husband had been serving as custodian. Thereafter, the trial court, nunc pro tunc, corrected the divorce judgment to reflect that the husband was the custodian of Victoria's $36,000 investment account.
The husband timely filed a motion to alter, amend, or vacate the divorce judgment or, in the alternative, for a new trial on the ground, among others, of newly discovered evidence. He alleged that the wife had lied when she answered in the negative an interrogatory and a question at trial regarding whether she had had sexual relations with anyone other than the husband during the marriage. To support his motion, the husband submitted four affidavits to the trial court. The first affidavit was executed by J.T., a physician, who averred that he had had a relationship with the wife after the husband had filed for a divorce. He testified that he had had sex with the wife on two occasions. He stated that he had observed the wife with the parties' minor son and that the wife had neglected the son on several occasions. J.T. testified that the wife had discussed marriage with him and that they had discussed selling his house so that they could build a house together. He testified that the wife later said that marriage between them would not be possible because his daughter and her son would never get along together. The wife ended her relationship with J.T. about the time the divorce trial began. J.T. stated that, after he had provided an affidavit to the husband, the wife broke into his house and his office and damaged some of his property.
The next affidavit was executed by H.P., a neighbor who provided J.T.'s name to the husband. He stated:
 "I went to U.A.B. Hospital on October 22, 2003 to visit with [B.T., a physician]. His brother, [J.T.], told [B.T.] that he had been dating my former next door neighbor, Vicki Gunter, and he wanted my opinion about her. He stated that Vicki was coming on very strongly to him and was already suggesting that he sell his house and that they build a house together.
 "[J.T.] also stated that she had a great body, one of the best, but he was not ready for all of her demands so quickly. He was uncomfortable with the fact that even though she had moved out, she was still married. He also stated that he did *Page 707 
not understand a mother who gave her kid Mountain Dew to drink for breakfast, lunch and dinner."
The third affidavit was executed by A.C., a female, who stated that, in approximately 2001, she and another woman, S.T., drove to the parties' house, where A.C. saw the wife sell S.T. three Lortab pills for $25. A.C. stated that, on another occasion, S.T. asked her to go the parties' house and to pick up something from the wife; that when A.C. arrived at the parties' house, the wife asked A.C. to come inside; and that the wife handed A.C. a "Nextel" brand cellular phone box containing approximately seven Lortab pills. A.C. testified that she later saw S.T. give the wife "a phone activation" in payment for the Lortab pills.
The last affidavit was executed by the husband, who stated that S.T., whose whereabouts had been unknown before trial, and who he had learned had been in "drug rehab" and, therefore, had been unavailable at the time of trial, provided him with A.C.'s name as a witness about one week after the trial had concluded. He stated that he had a discussion with his neighbor, H.P., who provided him J.T.'s name. The husband testified that he could not have discovered the information known to the witnesses before trial.
The wife did not file a response to, or any evidentiary material in opposition to, the husband's postjudgment motion.
Thereafter, the husband, as next friend of Victoria, filed a motion to allow Victoria to intervene in the divorce action and to alter, amend, or vacate the divorce judgment or, in the alternative, for a new trial on the ground that the trial court awarded personal property to the wife in which Victoria had an interest. Victoria's interest included her interest in property that she allegedly owned outright and property that was part of the residuary estate established by the will of her deceased great-grandmother, Olive S. Gunter, of which Victoria was a named beneficiary. Among other things, the motion seeking Victoria's intervention stated that the husband and the wife had failed to make Victoria a party to the action and had failed to have counsel or a guardian ad litem appointed to represent Victoria's interests. A copy of the will and an affidavit from Victoria were submitted in support of the motion.
The husband, as executor of Olive S. Gunter's estate, filed a motion joining in the motion to allow Victoria to intervene in the divorce proceedings.[1] Neither the wife nor the husband filed a response to, nor any evidentiary submission in opposition to, the motion filed on behalf of Victoria or the executor's motion joining in the motion filed on behalf of Victoria. Neither the wife nor the husband challenged the motions relating to Victoria's intervention as untimely.
On two occasions, the parties (i.e., the husband, individually; the wife; the husband, as the executor of the estate; and the husband, as next friend of Victoria) consented in writing to continue the pendency of the postjudgment motions, including the motion to intervene, and the trial court entered orders extending the time for the pendency of the motions. The trial court scheduled a hearing on the motions for April 7, 2004. At the hearing, the attorneys for all parties apparently advised the court that claims asserted on behalf of Victoria had been settled and that the *Page 708 
claims would be moot upon the parties' execution of a settlement agreement. On April 9, 2004, the trial court entered an order denying the motions for Victoria's intervention and the motions to alter, amend, or vacate or, in the alternative, for a new trial. The trial court later entered an order clarifying that it had denied the motion to appoint a guardian ad litem for Victoria as well.
The husband, as executor of the estate of Olive S. Gunter, and as next friend of Victoria, filed a Rule 60(b), Ala. R. Civ. P., motion for relief from the order denying the motions to allow Victoria to intervene and the motions to alter, amend, or vacate the divorce judgment on the ground that the wife had failed or refused to execute the settlement agreement. The trial court denied the Rule 60 motion. Thereafter, the husband, individually, appealed; he also appealed in his capacity as executor of Olive S. Gunter's estate and in his capacity as next friend of Victoria.
On appeal, the husband, individually, contends that the trial court abused its discretion in awarding custody of the minor child to the wife, in determining the amount of child support, in ordering the sale of the marital residence, in dividing the marital property, in ordering the husband to pay the wife's attorney a $12,000 attorney fee, and in refusing to grant a new trial based on newly discovered evidence. As the executor of the estate and as next friend of Victoria, the husband contends that the trial court erred by not allowing Victoria to intervene and by not appointing a guardian ad litem to represent her interests.[2]
We first address whether the trial court erred in denying the motions for Victoria's intervention. Rule 24(a), Ala. R. Civ. P., provides, in pertinent part:
 "Upon timely application, anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
This Court has held:
 "The purpose of intervention is to `"anticipate future litigation, to discourage a multiplicity of lawsuits, and to relieve the intervenor from the possible prejudice of stare decisis in subsequent litigation involving the same questions of law and fact."' Mars Hill Baptist Church of Anniston, Alabama, Inc. v. Mars Hill Missionary Baptist Church, 761 So.2d 975, 979 (Ala. 1999), quoting Root v. City of Mobile, 592 So.2d 1051, 1053 (Ala. 1992). In an appeal from the denial of a motion to intervene, the appellate court does not rule on merits of the underlying case; however, the court must discuss the underlying case in addressing the propriety of intervention. Valley Forge [Ins. Co. v. Alexander], . . . 640 So.2d [925] at 929, fn. 3 [(Ala. 1994)].
 ". . . A `practical' rather than a `technical' approach measures the doctrine of intervention as a matter of right pursuant to Rule 24(a)(2). Randolph County v. Thompson, 502 So.2d 357, 363 (Ala. 1987), citing State ex rel. Wilson v. Wilson, *Page 709 475 So.2d 194, 196 (Ala.Civ.App. 1985).
". . . .
 ". . . `"[T]he intervenor must have an interest in the subject matter of the litigation of such a nature that he will gain or lose by the direct legal operation of the judgment."' Valley Forge v. Alexander, 640 So.2d at 931, quoting Waters v. Jolly, 582 So.2d 1048, 1057 (Ala. 1991). . . .
 "As the supreme court noted in Valley Forge, `[t]imeliness is the first condition that must be met in order to intervene.' 640 So.2d at 928. . . ."
Long v. City of Hoover, 844 So.2d 1273, 1280-82 (Ala.Civ.App. 2002). Furthermore, the Alabama Supreme Court has held:
 "If the rights of the existing parties to the litigation would not be prejudiced, and if the intervention would not substantially interfere with the court's orderly processes, `the mere fact that judgment has already been entered should not by itself require the denial of an application for intervention.' Randolph County v. Thompson, [502 So.2d 357,] 365 [(Ala. 1987)]."
Lesnick v. Lesnick, 577 So.2d 856, 858 (Ala. 1991). In this case, the motions for Victoria's intervention were filed after the trial court entered a judgment purporting to award to the wife, as part of the marital property, certain personal property in which Victoria had an interest.
The will of Olive S. Gunter reflects that the personal property included in her residuary estate was to be distributed "in equal shares" among the husband, Victoria, and certain other children of the husband. Although, generally, "[b]eneficiaries under a will have no title [to personal property] until settlement and disbursement of the estate by the executors," Douglass v.Jones, 628 So.2d 940, 941 (Ala.Civ.App. 1993); see also
Ala. Code 1975, § 43-2-830, this does not mean that Victoria, as a beneficiary of the residuary estate of Olive S. Gunter, did not have an "interest relating to the property" in the estate sufficient to justify her intervention in the action pursuant to Rule 24(a). We conclude that Victoria does have such an interest in the personal property composing the residuary estate of Olive S. Gunter, that she is so situated that the disposition of the divorce proceeding "may as a practical matter impair or impede [her] ability to protect [her] interest," and that her interest as to the property is not "adequately represented by existing parties" in the divorce proceeding.[3]
Accordingly, the trial court erred by denying Victoria's motion to intervene. The trial court also erred by denying the motion to appoint a guardian ad litem to represent Victoria's interests.See English v. Miller, 370 So.2d 968, 969 (Ala. 1979) ("The possibility that the children's interest, if any, is adverse to the interest of those made parties, including their mother, . . . necessitates the appointment of a guardian ad litem, as prescribed by Rule 17(c), [Ala. R. Civ. P.]").
Next, we address the husband's contention that the trial court erred in denying his motion to alter, amend, or vacate the divorce judgment or, in the alternative, for a new trial on the ground of newly discovered evidence. The husband presented evidence tending to show *Page 710 
that the wife perjured herself when she answered in the negative interrogatories and questions at trial regarding whether she had had sexual relations with an individual other than her husband and questions as to whether she had ever sold drugs. The wife filed no response to the affidavits summarizing the newly discovered evidence and no opposition to the husband's postjudgment motion. The trial court denied the husband's postjudgment motion without a hearing.
In Ex parte Evans, 875 So.2d 297 (Ala. 2003), the trial court granted the parties a divorce on the grounds of incompatibility and an irretrievable breakdown of the marriage, despite the husband's admission at trial that he had committed adultery. The wife filed a postjudgment motion seeking relief in the form of a "`divorce . . . on the grounds of adultery.'" 875 So.2d at 299. The trial court denied the motion without a hearing, and, on appeal, this court affirmed the judgment. On certiorari review, the Alabama Supreme Court reversed, holding that there was probable merit to the wife's Rule 59, Ala. R. Civ. P., postjudgment motion and, accordingly, that the trial court had erred by denying the motion without a hearing. The court stated the following principles with regard to Rule 59(g), Ala. R. Civ. P.:
 "`In general, whether to grant or to deny a posttrial motion is within the sound discretion of the trial court, and the exercise of that discretion will not be disturbed on appeal unless by its ruling the court abused some legal right and the record plainly shows that the trial court erred. See Green Tree Acceptance, Inc. v. Standridge, 565 So.2d 38 (Ala. 1990). However, if a party requests a hearing on its motions for a new trial, the court must grant the request. Rule 59(g), Ala. R. Civ. P. See Walls v. Bank of Prattville, 554 So.2d 381, 382 (Ala. 1989) ("[W]here a hearing on a motion for [a] new trial is requested pursuant to Rule 59(g), the trial court errs in not granting such a hearing."). Although it is error for the trial court not to grant such a hearing, this error is not necessarily reversible error. For example, if an appellate court determines that there was no probable merit to the motion, it may affirm based on the harmless-error rule. See Rule 45, Ala. R.App. P.; and Kitchens v. Maye, 623 So.2d 1082, 1088 (Ala. 1993) ("failure to grant a hearing on a motion for new trial pursuant to Rule 59(g) is reversible error only if it `probably injuriously affected substantial rights of the parties'").'"
Ex parte Evans, 875 So.2d 297, 299-300 (Ala. 2003) (quotingFlagstar Enters., Inc. v. Foster, 779 So.2d 1220, 1221 (Ala. 2000)). Following Evans, we cannot conclude that in the present case the trial court's denial of the husband's postjudgment motion without a hearing was harmless error. "[T]he conduct of the parties and fault with regard to the breakdown of the marriage are factors for the trial court to consider in fashioning its property division," Myrick v. Myrick,714 So.2d 311, 315 (Ala.Civ.App. 1998), and in making its custody determination, Smith v. Smith, 887 So.2d 257, 261-62
(Ala.Civ.App. 2003).
At trial, the husband asserted that the wife was having a sexual relationship with a female friend. The wife denied having a sexual relationship with her friend. The husband offered into evidence a videotape that, he argued, showed the wife and her female friend engaged in inappropriate behavior in the marital bedroom while the minor child lay on a pallet on the floor at the end of the bed. The husband also offered into evidence audio compact discs ("CDs") and a transcript containing discussions between the wife and her female friend. One of the CDs was recorded at *Page 711 
the same time as the videotape. The wife and her friend discussed taking the drug "ecstasy," having sexual relations with each other, and the wife's having sexual relations with another man. At trial, the wife testified that she had discovered the camera and listening devices in the bedroom and that, because she knew about the camera and listening devices, she and her friend had the recorded discussions as a "joke" on the husband. The videotape, CDs, and transcript were admitted into evidence. The husband also introduced into evidence cards and letters from the wife's female friend to the wife. The cards and letters contain messages or expressions of emotions that are indicative of a sexual relationship between the wife and her female friend.
Although the trial court may have disbelieved all of the foregoing evidence, we cannot say, in light of the husband's newly discovered evidence — the wife's alleged perjury, the wife's alleged adultery with J.T., a male, and the wife's alleged sale of drugs — that the husband's postjudgment motion had no probable merit and that its denial without a hearing did not prejudice his substantial rights. Accordingly, we conclude that the trial court erred by denying the husband a hearing on his postjudgment motion.
We reverse the trial court's judgment and remand the cause for the trial court to conduct a hearing on the motion filed by the husband pursuant to Rule 59(g), Ala. R. Civ. P. Further, the trial court is instructed to enter an order providing for Victoria's intervention and appointing a guardian ad litem to represent her interests and to conduct a hearing to consider her alleged interests in the personal property at issue.
The appellee's request for the award of an attorney fee on appeal is denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
All the judges concur.
[1] The husband did not file a motion requesting that he, in his capacity as executor of the estate, be allowed to intervene on behalf of the estate. In other words, the motion filed by the husband in his capacity as executor of the estate constituted only a request that the trial court grant the motion filed on behalf of Victoria for her intervention.
[2] As noted, the husband, as next friend of Victoria, argued to the trial court that Victoria had a right to intervene based on her present ownership of certain personal property and her beneficial interest in the residuary estate established by Olive S. Gunter's will. The appeal on behalf of Victoria is based only on the latter ground.
[3] We note that the husband, in his capacity as executor, did not file a motion to protect the interests of the estate. Based on the terms of Olive S. Gunter's will, the husband, individually, stands to benefit more from the treatment of any disputed personal property as marital property rather than as property of the estate. On the other hand, it would be in Victoria's interest for any such property to be treated as property of the estate.